George A. WILLIAMS,
Plaintiff, Appellant,

v.

SEA–LAND CORPORATION, et al.,
Defendants, Appellees.

No. 87–1908.

United States Court of Appeals,
First Circuit.

Heard March 10, 1988.

Decided April 15, 1988.

Jesus Hernandez Sanchez with whom Antonio Hernandez Sanchez Roberto L. Garcia Vega, Santurce, P.R., and Ricardo Skerrett Yordan, San Juan, P.R., were on brief for plaintiff, appellant.

David C. Indiano with whom Jimenez, Graffam & Lausell, San Juan, P.R., was on brief for defendant, appellee Sea–Land Corp.

Ginoris Vizcarra de Lopez–Lay with whom Lopez–Lay & Vizcarra, Santurce, P.R., was on brief for defendant, appellee Seafarers Intern. Union of North America, Atlantic Gulf Lakes and Inland Waters Dist., AFL–CIO.

Before BOWNES, Circuit Judge, WISDOM,[*] Senior Circuit Judge, and BREYER, Circuit Judge.

BOWNES, Circuit Judge.

This is an appeal from a summary judgment dismissing plaintiff's complaint against Sea–Land Corporation (Sea–Land) for breach of a collective bargaining agree-

* Of the Fifth Circuit, sitting by designation.

ment and against the Seafarers International Union, Atlantic, Gulf, Lakes and Inland Waters District, AFL–CIO (Union) for breach of its duty of fair representation. *See* 29 U.S.C. § 185. The plaintiff, George Williams, worked as a fireman and water tender on the S.S. OAKLAND, a ship that sailed between Puerto Rico and Jacksonville, Florida. On August 21, 1985, while at sea, Williams and the chief engineer got into a heated altercation in the engine room, as a result of which Williams was discharged. When the ship arrived in Jacksonville, Williams called the Union and requested that a representative be sent on board to investigate his dismissal. The Union complied by sending a "patrolman" who, after meeting separately with Williams and the chief engineer, determined that the discharge was for cause. Williams filed suit in the United States District Court for the District of Puerto Rico in February 1986. He alleged that Sea–Land dismissed him without reasonable cause in violation of the collective bargaining agreement and that the Union breached its duty of fair representation by not filing a grievance on his behalf pursuant to the provisions of that agreement. The court granted Sea–Land's motion for summary judgment and dismissed the case against both Sea–Land and the Union with prejudice. We affirm.

## I.

We begin with the procedural background of the case. On February 18, 1986, Williams filed his complaint. Sea–Land filed its motion for summary judgment on September 29, 1986. By January 1987, Williams had still not submitted his opposition to the motion, even though the court had allowed him extra time to do so on three occasions. The court, therefore, ruled that it would consider Sea–Land's motion unopposed. The court further ordered that Williams was "hereby precluded from filing any late opposition to said motion in view of his unjustified delay." In a document entitled "Reply To Sea–Land Opposition To Our Motion For Reconsideration And Request Its Motion For Summary Judgment Be Denied," Williams attempted to oppose the summary judgment motion by setting forth "legal and factual arguments" and by submitting excerpts from his deposition taken during October 1986. The court ordered the documents stricken from the record and denied Williams' motion for reconsideration.

In its first order, issued on May 20, 1987, the court denied Sea–Land's motion for summary judgment. But in a subsequent order issued on August 24, 1987, after reconsideration pursuant to Federal Rule of Civil Procedure 60(b), the court granted Sea–Land's motion on the ground that Williams had failed to exhaust the remedies available under the collective bargaining agreement before initiating his action in federal court. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The court also ruled that Williams' situation did not fall within one of the exceptions to the exhaustion requirement. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). This appeal followed.

## II.

In *Republic Steel,* the Supreme Court held that "individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union" before seeking direct legal redress. 379 U.S. at 652, 85 S.Ct. at 616 (emphasis in original). *Vaca v. Sipes* recognized two situations when an employee "may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." 386 U.S. at 185, 87 S.Ct. at 914. The first is when "the conduct of the employer amounts to a repudiation of th[e] contractual procedures." *Id.* (citation omitted). The second is when "the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and* if, ... the [employee] has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance." *Id.* (emphasis in original). A "wrongful" refusal is one in

which the union has breached its duty of fair representation to the employee. *Id.* at 186, 87 S.Ct. at 914–15. And a breach occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916 (citations omitted). *See also Hines v. Anchor Motor Freight Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) (enforcement of an arbitrator's decision where the arbitrator has erred, is conditioned upon the union's having satisfied its statutory duty fairly to represent the employees in connection with the arbitration proceedings). *Vaca v. Sipes*, in essence, created two exceptions to the exhaustion requirement established in *Republic Steel:* conduct by the employer repudiating the contractual procedures or the wrongful refusal by the union to process the grievance.

■ To oppose successfully Sea–Land's motion for summary judgment, Williams had to show that there was a "genuine issue" about a "material fact." Fed.R. Civ.P. 56(c). *See Daury v. Charles Smith*, 842 F.2d 9, 11 (1st Cir.1988) (setting forth the standard for reviewing a trial court's grant of summary judgment). Williams contends that he created a "genuine issue" about two material facts: (1) whether under the collective bargaining agreement[1] an employee may appeal a dismissal directly—that is, without the Union—to the Seafarers Appeals Board; and (2) whether the Union's refusal to process his grievance reflected conduct that could be characterized as "arbitrary, discriminatory, or in bad faith."

Williams did succeed in creating a genuine issue about the first question. In its Motion to Alter and Amend the district court's judgment of May 22, 1987, Sea–Land contended that under the collective

bargaining agreement, an individual employee may submit a complaint about a wrongful discharge to the Seafarers Appeals Board without representation of the Union.[2] Sea–Land was correct to call this contention a "threshold question." It is undisputed that Williams did not appeal his discharge to the Board. And if it were true that Williams *could* have appealed to the Board, his failure to do so would have been in direct violation of the exhaustion requirement set forth in *Republic Steel.* Summary judgment in favor of Sea–Land would have been proper on this ground alone.

But we cannot say that the collective bargaining agreement clearly gives an employee a right to challenge his or her dismissal independently of the Union. Article I, Section 4(a), provides in relevant part that

> [i]f the Union considers the ... discharge of any member of the Unlicensed Personnel as being without reasonable cause such action by such Company shall be dealt with under the grievance procedure....

The "grievance procedure" is set forth in Article II. An employee must first inform the ship's "delegate" of his or her complaint. The delegate in turn must present the complaint to his or her superior officers. Article II, Section 2(a). If the grievance "cannot be satisfactorily adjusted on board the vessel there shall be established a Port Committee" consisting of three representatives from the Union and three from the Company. If the Port Committee cannot agree on how to settle the matter, "[its members] shall select an impartial arbitrator whose decision shall be final and binding." Article II, Section 3.

---

1. The parties agree that the collective bargaining agreement in effect at the time of the dispute was the "1985 New Standard Freightship Agreement between Seafarers International Union, Atlantic, Gulf, Lakes and Inland Waters District, AFL–CIO and Contracted Companies (January 1, 1985–June 15, 1987)."

2. Sea–Land has not made this argument on appeal, but Williams has answered it on appeal by

arguing that there was a real controversy as to his authority and capacity to proceed alone without the Union. To assure Williams that we have considered this point, we will discuss it herein, even though, as will be clear further on, resolution that there was a genuine issue on this matter does not render inappropriate the district court's grant of summary judgment in favor of Sea–Land.

Article I of the collective bargaining agreement establishes another complaint procedure. Under Section 8(c), "[t]here is created the Seafarers Appeals Board, a permanent board of four (4) members, to hear and determine all disputes arising under this Article I, and to promulgate and administer the Shipping Rules authorized by this Section 8." Section 8(h) authorizes "[a]ny person or party subject to or aggrieved by the application of this Section 8" to "submit any matter hereunder to the Seafarers Appeals Board for determination." The language is confusing; it is not clear to what the phrase in Section 8(c) "arising under this Article I" refers. Sea–Land claimed that the phrase authorizes the Board to hear every dispute covered by Article I, including disputes about wrongful discharges by the Company. Yet Section 8(h) appears to limit the Board's jurisdiction to those disputes arising through the "application of Section 8." And Section 8 generally authorizes the promulgation of the Shipping Rules, which, on their face, do not deal with wrongful dismissals by the Company. Rather, these rules address, *inter alia*, such matters as seniority, shipping procedure, and crew rotation. In short, although it is clear that an employee may invoke the Union's protection by pressing a complaint through the several steps of the grievance procedure, it is simply unclear whether such an employee may also (or in the alternative) bring a complaint directly to the Seafarers Appeals Board.

Williams failed, however, to create a genuine issue as to whether the Union's refusal to process his grievance amounted to conduct that was "arbitrary, discriminatory, or in bad faith." For even if we assume that Williams could not have brought

his complaint directly to the Seafarers Board, there is no question that under the collective bargaining agreement he could have pressed his grievance with the Union and sought a decision from the Port Committee, and ultimately, from an arbitrator. Williams' failure to exhaust these internal remedies is fatal unless he can show that the Union's refusal to file a grievance on his behalf was a breach of its duty of fair representation—that is, under *Vaca v. Sipes*, "arbitrary, discriminatory, or in bad faith." 386 U.S. at 190, 87 S.Ct. at 916. We find no evidence of such wrongful conduct here.[3]

The evidence of the Union's conduct before the district court, viewed in the light most favorable to Williams, *see Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1, 4 (1st Cir.1984), was as follows. The altercation between Williams and the chief engineer erupted when the chief engineer began "hollering" at Williams. Williams grew angry and demanded "respect" but was dismissed for what the chief engineer deemed insubordination. Williams asked the ship's delegate to have his dismissal investigated by a Union representative. When a ship docks, the Union generally sends a "patrolman" on board to meet with the employees to hear of any problems that they may have had while at sea. Williams complained to the patrolman sent aboard the S.S. OAKLAND upon the ship's arrival in Jacksonville. After meeting separately with Williams and the chief engineer, the patrolman concluded that the discharge was "for cause"—that is, the failure by Williams to follow orders. He informed Williams of his decision and wrote up a report. At no point did Williams demand that the Union proceed with his grievance.[4] The Union never convened a Port Commit-

---

**3.** On June 15, 1987, Williams filed a "Motion to Amend Complaint Nunc Pro Tunc" to add that the "[p]laintiff avers that defendant's UNION acted in an arbitrary and bad faith manner under the facts of the present case breaching its duty of fair representation." Both Sea–Land and the Union opposed the motion, which the court denied on August 24, 1987. Williams appeals the denial of this motion and Sea–Land and the Union argue for its affirmance. We fail to see the point of raising the issue at all, since the district court treated Williams' complaint as

if it had alleged that the Union acted in an arbitrary and bad faith manner. In short, although the court denied Williams' motion to amend the complaint, the court read the complaint broadly, and treated it as if it alleged what Williams sought by amendment, to include explicitly.

**4.** On June 19, 1987, Sea–Land filed a "Motion Submitting Admissions of Plaintiff Pursuant to Rule 16(c)(1) and (3)." Attached to that motion was a transcript of the deposition of Williams

tee to hear Williams' complaint; nor did it submit the complaint to an impartial arbitrator.

The Union's behavior cannot be described as arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes* makes clear that although "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," an individual employee does not have "an absolute right to have his grievance taken to arbitration...." 386 U.S. at 191, 87 S.Ct. at 917. Recognizing that unions should be encouraged to settle frivolous grievances prior to the "most costly and time-consuming step in the grievance procedures", *id.*, the Court concluded that "a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration." *Id.* at 192, 87 S.Ct. at 918.

Here, the Union neither ignored Williams' complaint nor processed it in a perfunctory way. *Cf. Soto Segarra v. Sea–Land Service, Inc.*, 581 F.2d 291 (1st Cir.1978) (finding breach of duty of fair representation in union's failure to respond to employee's repeated requests that the union investigate and process his discharge grievance); *De Arroyo v. Sindicato De Trabajadores Packinghouse, AFL–CIO*, 425 F.2d 281 (1st Cir.), *cert. denied*, 400 U.S. 877, 91 S.Ct. 121, 27 L.Ed.2d 115 (1970) (finding breach of duty of fair representation in union's failure to discern an obvious basis under the contract for pressing a number of grievances). Instead, after investigating, the Union merely settled the complaint "short of arbitration." This was entirely proper. *See Robbins v. George W. Prescott Publishing Co.*, 614

F.2d 3, 4 (1st Cir.1980) ("under a grievance procedure an employee complaint is terminated if the union concludes not to go ahead with it, absent bad faith"); *cf. Early v. Eastern Transfer*, 699 F.2d 552 (1st Cir.), *cert. denied*, 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983) (union investigated grievance properly when its representative spoke with the grievants and company officials on the day of the allegedly wrongful discharge).

Williams may have been disappointed with the Union's judgment that his discharge was "for cause," but that disappointment, without more, does not give rise to a claim against the Union for breach of its duty of fair representation. We are especially reluctant to infer wrongful behavior from the Union's failure to press Williams' grievance when Williams himself failed to convey to the Union his desire to invoke the grievance procedure. Williams' claim that the Union's conduct was arbitrary, discriminatory, and in bad faith, reduces to nothing more than a " 'skeletal set of bland allegations' ". *Berrigan v. Greyhound Lines, Inc.*, 782 F.2d 295, 299 (1st Cir.1986) (quoting *Dewey v. Univ. of New Hampshire*, 694 F.2d 1, 4 (1st Cir.1982)); *see MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48 (1st Cir.1987) (finding that the union representative's personal opinion concerning the plaintiff's incompetence, stated after an investigation and an unsuccessful arbitration, was an insufficient basis upon which to oppose defendants' motion for summary judgment).

*Affirmed.*

taken on October 22, 1986. Unlike the deposition excerpts submitted by Williams in his attempt to oppose (belatedly) Sea–Land's motion for summary judgment, this transcript was properly before the district court. The transcript did not contain the language of those excerpts struck from the record. What it did contain, however, was a statement by Williams that once back in Puerto Rico, where he returned after his discharge, Williams went to the Union Hall to talk to a "Mr. Angel" about "the problem." Williams says nothing more than this; in particular, he does not describe the outcome of that discussion. The reference to

"Mr. Angel" is apparently to "Mr. Angelo Gonzalez," the port agent for the Union whom Williams' attorney wrote to on February 8, 1986, just before filing the instant action. In that letter, Williams' attorney asserts that "[i]mmediately after his discharge [Williams] spoke to ... the union ship delegade [sic] requesting his case be submitted to the grievance committee and let him know about the date of the hearing." This evidence is much too weak to create a genuine issue as to whether Williams attempted to grieve his dismissal. Had Williams wanted to present the point, he could have submitted an affidavit attesting to it.