**Daniel MENSAH, Plaintiff,**

**v.**

**NEWTON BUYING CORP. d/b/a T.J. Maxx and International Ladies' Garment Workers Union, Defendants.**

**Civil Action No. 95–10719–WGY.**

United States District Court,
D. Massachusetts.

May 28, 1996.

Ralph W. Sargent, Jr., Ball & Sargent, Worcester, MA, for Daniel Mensah.

John F. McMahon, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, MA, Irving Ritz, Framingham, MA, for Newton Buying Corp. dba T.J. Maxx.

John F. McMahon, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, MA, for International Ladies' Garment Workers Union.

### MEMORANDUM

YOUNG, District Judge.

### I. INTRODUCTION

Daniel Mensah ("Mensah") brought this action for breach of a collective bargaining agreement against Newton Buying Corp., d/b/a T.J. Maxx ("T.J. Maxx") and for breach of the duty of fair representation against the International Ladies Garment Workers Union, AFL–CIO ("Union").[1] Mensah asserts both that the Union breached its duty of fair representation and that T.J. Maxx breached the Agreement between it and the Union. In a hybrid[2] suit involving breach of duty of

---

1. The Union is presently named Local 313, Union of Needletrades, Textile and Industrial Employees as the result of a recent merger. Joint Pretrial Document at 1 n. 2.

2. A hybrid suit formally comprises two causes of action. First, the employee alleges that the employer violated § 301 of the Labor Management

Relations Act, 29 U.S.C. § 185. Second, the employee claims that the union breached its duty of fair representation. *See e.g., Reed v. United Transp. Union*, 488 U.S. 319, 328, 109 S.Ct. 621, 627, 102 L.Ed.2d 665 (1989); *Miller v. United States Postal Serv.*, 985 F.2d 9, 10 (1st Cir.1993).

fair representation and breach of contract claims, "a plaintiff must prove both that the employer broke the collective bargaining agreement and that the union breached its duty of fair representation, in order to recover against either the employer or the union." *Chaparro–Febus v. Int'l Longshoremen Ass'n, Local 1575*, 983 F.2d 325, 330 (1st Cir.1992) (citing *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 [1983] ). Pursuant to the individualized Case Management Order governing this case, the parties had agreed to a trial readiness date of April 1, 1996. In March, the parties filed a Joint Pretrial Document containing nineteen paragraphs of undisputed facts and fifteen exhibits, including deposition transcripts of four witnesses, Union memoranda, and T.J. Maxx personnel documents. At a final pre-trial conference held in mid-March, the Union claimed that there was, in fact, no triable issue and that it, and therefore T.J. Maxx as well, was entitled to judgment as matter of law.

█ This is a familiar scenario in this session given this Court's adamantine refusal to continue a trial date once the parties have established it by agreement at the initial case management scheduling conference held pursuant to Local Rule 16.1. The Federal Rules of Civil Procedure are, however, sufficiently flexible to handle such a situation without continuing the trial and also without resort to the procedural steps usually necessary to frame a motion for summary judgment. *See* Local Rule 56.1 (motions for summary judgment). Pursuant to Fed.R.Civ.P. 16(a)(1), (c)(1), (c)(3) through (c)(5), and (d), this Court reviews the submission of the moving party just as it would a motion for summary judgment pursuant to Fed.R.Civ.P. 56 but, given the imminence of trial, in lieu of a formal opposition this Court accepts the representations of opposing counsel concerning those issues of material fact that are genuinely disputed.

This works well. It is fair to the opponent as it does not subject him to a last-minute flurry of paper production that will interfere with his final trial preparations, and it is to be expected that, by the time of the final pre-

trial conference, opposing counsel will factually understand the case. What's more, this procedure is extraordinarily effective in focusing the litigants on the issues genuinely in dispute. As is the case in the summary judgment context, the Court draws all reasonable inferences against the moving party. *Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1, 4 (1st Cir.1984) (citations omitted). As the parties have conducted extensive discovery and have submitted all of their evidence, *see Stella v. Town of Tewksbury*, 4 F.3d 53, 55 (1st Cir.1993), this Court's utilization of this procedure is appropriate.

## II. *STATEMENT OF FACTS*

The Court here followed the procedure just described. The following facts, drafted in a light most favorable to Mensah, appear undisputed:

Mensah, a general warehouse employee, was discharged from his employment with T.J. Maxx on July 20, 1994. Mensah had worked at T.J. Maxx's Distribution Center ("Distribution Center") in Worcester, Massachusetts since February, 1985. While an employee, Mensah was a beneficiary of the collective bargaining agreement (the "Agreement") signed between the Union and T.J. Maxx. The Agreement ensures that no employee covered by the Agreement "shall be disciplined or discharged without just cause" unless the termination is a result of "insubordination, gross misconduct" or other actions not relevant to this case. "[J]ust cause" includes "acts of bias or discrimination towards co-employees." Joint Pretrial Document at ¶ 3. The Agreement also contains a provision for arbitration in the event of a dispute between the Union and T.J. Maxx. The Agreement was in effect at the time of Mensah's discharge.

On July 15, 1994, David Hutchins ("Hutchins"), a T.J. Maxx Facility Manager, William Butler ("Butler"), Mensah's supervisor, and Richard Davis ("Davis"), a Union Steward, met with Yani Toch ("Toch"), a female employee at the Distribution Center, to discuss the complaint she had filed earlier concerning Mensah. Toch stated that Mensah had taken a surprise photograph of her at work after she explicitly refused his request for

her to pose. She was very upset during the meeting and expressed fear of Mensah. Following this interview, Hutchins, Butler, and Davis confronted Mensah and asked if he had indeed photographed Toch. Upon his admission, Hutchins demanded that Mensah surrender the film. Mensah complied and explained that Toch did not refuse to be photographed but rather said he could take her picture when she was not looking. At this point, either Hutchins or Butler informed Mensah that the investigation into his conduct would continue.

On July 18, 1994, representatives from T.J. Maxx and the Union jointly interviewed and took written statements from three other female employees who told of similar incidents involving Mensah. One told of an occasion when Mensah repeatedly asked if he could take her photograph. Another stated that Mensah asked her on a date and asked if he could take her photograph. Another stated that Mensah had photographed her by surprise while at work. After she demanded the picture and the negatives, Mensah surrendered the materials to her.

On July 20, 1994, Mensah's employment was terminated for "harassment [and] gross negligence." Joint Pretrial Document Ex. 1. The termination notice stated that Mensah created a "hostile and intimidating environment" at the Distribution Center. *Id.* Mensah responded by writing on the termination notice that the accusations about his conduct were false and that other employees could attest to his conduct. *See id.* Thereafter, Davis encouraged Mensah to file a grievance protesting his discharge. Either Davis or Charles E. Moore ("Moore"), a Union Executive Board ("Board") Member, then informed Mensah that his grievance would be reviewed by the Board. Mensah submitted a grievance the following day. In deposition testimony, Mensah stated that his grievance set

forth "all of the facts that [he] wanted the Union to consider in processing [his] case." Mensah Dep. at 58, 11. 6–12.

Between July 21 and August 2, 1994, Moore obtained documents from T.J. Maxx's Human Resources Department, including statements from the four female employees and a 1992 complaint about Mensah filed by Ms. Dexter Maissonet, another T.J. Maxx employee. On August 2, 1994, the Board unanimously voted not to pursue Mensah's grievance and advised him of this decision by letter.

### III. *DISCUSSION*

■ T.J. Maxx and the Union argue that they are entitled to judgment as Mensah has not borne his burden of producing *prima facie* evidence to support the fundamental elements of his case. In the Rule 16 context, once a party has used the pleadings, discovery, and any submitted affidavits to demonstrate that there is no genuine dispute as to material fact, the non-moving party bears the burden of reciting evidence sufficient to demonstrate that he can carry his burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). This burden of production is not satisfied by mere allegations or denials; it can only be satisfied by the recitation of specific facts that, if believed, would warrant judgment for Mensah. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202; Fed.R.Civ.P. 56(e).

### A. Breach of Duty of Fair Representation

■ To survive the entry of judgment, Mensah must demonstrate a genuine issue of material fact as to whether the Union met its duty of fair representation.[3]

3. Although not explicitly found in the National Labor Relations Act, 29 U.S.C. § 159(a), the duty of fair representation has been implied from the union's exclusive power to represent all employees in the union under § 9(a) of the National Labor Relations Act. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In *Vaca,* the Supreme Court implied that a breach of this duty constitutes an unfair labor practice under § 8(b) of the Labor Management Relations Act, 29 U.S.C. § 185(b). *Id.* at 178–79, 87 S.Ct.

at 910–11 (referring specifically to the decision by the National Labor Relations Board in *Miranda Fuel Co.,* 140 N.L.R.B. 181 [1962] which held the same). The statutory duty of fair representation evolved from a series of cases brought before the Supreme Court involving alleged racial discrimination by unions certified as exclusive bargaining agents under the Railroad Labor Act, *see Steele v. Louisville & Nashville R.R.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944)

When a union has the sole power to invoke the grievance procedure and prevents an employee from exhausting his contractual remedies due to its refusal to process the grievance, that decision must be "arbitrary, discriminatory or in bad faith" to constitute a breach of the duty of fair representation. *Vaca*, 386 U.S. at 190, 87 S.Ct. at 916–17. The Supreme Court has held that a union's actions are arbitrary only if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (quoting *Ford Motor Co.*, 345 U.S. at 338, 73 S.Ct. at 686). To establish a breach of the duty of fair representation, "it must be shown that [the] handling of the grievance was itself materially deficient." *Early v. Eastern Transfer*, 699 F.2d 552, 556 (1st Cir.1983). In addition, the law is well-settled that a union does not have an affirmative duty to pursue every grievance that comes before it. *See Hines v. Anchor Motor Freight*, 424 U.S. 554, 567–68, 96 S.Ct. 1048 (1976) (quoting *Vaca*, 386 U.S. at 190–91); *Berrigan v. Greyhound Lines, Inc.*, 782 F.2d 295, 298 (1st Cir.1986) (finding that if a union were held to arbitrate "a case that it felt had little basis in the contract, it arguably would jeopardize its credibility with the employer for purposes of later, more supportable, disputes with management policies, instituted on behalf of all members"); *Gregg v. Chauffeurs Union Local 150*, 699 F.2d 1015, 1016 (9th Cir.1983) (concluding that the merits of the grievance and its importance to the employees are relevant to the union's decision whether to arbitrate). Furthermore, *Vaca* unequivocally states that an individual employee does not possess an "absolute right to have his grievance taken to arbitration." *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. Here, Mensah argues that the Union did not fairly represent him because (1) Moore failed to interview two of the female employees who filed complaints about Mensah, (2) Moore failed to report Mensah's grievance to the Board prior to its vote,[4] (3) Mensah was not allowed an opportunity to defend the accusations made against him, and (4) the Union failed to canvass fellow employees to obtain material helpful to Mensah.

This Court begins its analysis by addressing Mensah's first two allegations regarding Moore's disputed actions in light of the legal standards just cited. Mensah's allegations are simply without foundation. There is here no evidence upon which a reasonable factfinder could conclude that Moore failed to interview the two female complainants or neglected to report Mensah's grievance to the Board. The record demonstrates that Mensah was not present during the Board meeting when his grievance was discussed nor was he in attendance during interviews with the female employees. *See* Mensah's Dep. at 60, 11. 3–21. His allegations, therefore, cannot possibly be based on personal knowledge as to the content or the caliber of Moore's discussions and actions. He has similarly failed to recite any evidence which contradicts Moore's sworn testimony that he did indeed take such actions. *See* Moore Dep. at 16–18, 22.

Mensah's third factual allegation concerning his expectation that the Union would provide him an opportunity to defend himself against the accusations made by the female complainants is also insufficient. In his sworn testimony, Mensah indicates that he was indeed afforded an opportunity to ex-

---

(involving a suit by a black railroad fireman to set aside a seniority agreement negotiated by his union, which discriminated against blacks), and was later extended to unions certified under the National Labor Relations Act, *see Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

**4.** Mensah also asserts that Moore guaranteed that his grievance would be brought to arbitration. The Court does not address this allegation, as it is irrelevant to the duty of fair representa-

tion inquiry since an individual employee does not possess an absolute right to arbitration. *See Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. Furthermore, Mensah's allegation is contradicted both by his own deposition testimony, *see* Mensah Dep. at 73, 11. 5–9, and the deposition testimony of Moore, *see* Moore Dep. at 31, 11. 1–2, and thus is not entitled to credit. *Lowery v. AIRCO, Inc.*, 725 F.Supp. 82, 85–86 (D.Mass.1989); Robert K. Gad III, The "O'Brian Rule" and Deposition Defense Practice, *Cutting Edge Civil Litigation* (MCLE, 1996) at 1.

press his side of the story during the meeting on July 20, 1994 with Davis, Hutchins, and Moore following receipt of his termination notice. *See* Mensah Dep. at 39–40. Mensah was also informed of his right to file a grievance and subsequently wrote and submitted a four page letter to the Board containing his version of events. *See* Joint Pretrial Document Ex. 9. Furthermore, Mensah testified that his grievance contained "all of the facts that [he] wanted the [U]nion to consider in processing [his] case." Mensah Dep. at 58, 11. 6–12.

Mensah's final claim is that the Union failed to canvass employees to gather information favorable to his case and, therefore, violated its duty of fair representation. While the Union did not canvass as many employees as Mensah may have hoped, such action is not required to fairly represent the interests of a union member. A union is allowed "great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it." *Miller v. U.S. Postal Serv.*, 985 F.2d 9, 12 (1st Cir.1993) (citing *Torres–Matos v. St. Lawrence Garment Co.*, 901 F.2d 1144, 1148 [1st Cir.1990] ). The Union's investigation was neither irrational nor arbitrary given the undisputed actions taken by Union representatives. Union Steward Davis participated in the gathering of statements from the female complainants. Both Davis and Moore encouraged Mensah to file a grievance and informed him that the Board would review it and decide if his grievance should proceed to arbitration. The Board promptly responded to the filing of Mensah's grievance by reviewing the documents and reaching a decision within two weeks of Mensah's discharge. The parties have also stipulated that no hostility existed between Mensah and the Union prior to the Board's refusal to arbitrate his grievance.

As a result of the Union's alleged failure to perform its duties to Mensah's satisfaction, he argues that the Union was "negligent" in its investigation. Mensah Dep. at 55, 11. 15–17. Even if Mensah could support a showing of negligence, the First Circuit has stated that "mere negligence or error is not enough" to establish a breach of

the duty of fair representation. *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 50 (1st Cir.1987). Nothing in the record indicates that the Union, through its investigation and subsequent decision not to proceed with Mensah's grievance, could be found to have acted perfunctorily or in bad faith. Mensah has not made the minimal showing of negligent conduct that would warrant a jury trial of his claim. While Mensah may have been disappointed with the Union's refusal to take his grievance to arbitration, that "disappointment, without more, does not give rise to a claim against the [u]nion for the breach of its duty of fair representation." *Williams v. Sea–Land Corp.*, 844 F.2d 17, 21 (1st Cir. 1988).

**B. Breach of Collective Bargaining Agreement**

As stated above, Mensah cannot succeed on his breach of contract claim against T.J. Maxx unless he establishes a genuine issue concerning the Union's duty of fair representation. As Mensah has failed to make out a case against the Union, the symbiotic nature of a hybrid suit described above at note 2 requires this Court to reject his contract claim against T.J. Maxx.

**IV. CONCLUSION**

For the reasons set forth herein, pursuant to this Court's ability to grant judgment *sua sponte* under Federal Rule of Civil Procedure 16, it ordered judgment in favor of the Union and T.J. Maxx on April 12, 1996.