Dennis NEWBANKS, Plaintiff,

v.

CENTRAL GULF LINES, INC., and the International Organization of Masters, Mates, and Pilots, AFL—CIO, Defendants.

No. Civ.A. 97–11246 EFH.

United States District Court,
D. Massachusetts.

Sept. 15, 1999.

Scott A. Lathrop, Groton, MA, for Dennis Newbanks, plaintiff.

Wilfred J. Benoit, Jr., Goodwin, Procter & Hoar, Boston, MA, William M. Spelman, Lambose & Junge, New York City, for Central Gulf Lines, Inc., defendant.

William Hewig, III, Kopelman & Paige, P.C., Boston, MA, Ernest Allen Cohen, Tucson, AZ, for International Organization of Masters, Mates and Pilots, AFL—CIO, defendant.

## MEMORANDUM & ORDER

HARRINGTON, District Judge.

This matter is before the Court on a motion for summary judgment brought by Defendant International Organization of Masters, Mates, and Pilots, AFL—CIO ("MMP"). The plaintiff brings this hybrid action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff argues that the failure of MMP to arbitrate his post-termination grievance was arbitrary, capricious, and in bad faith, and therefore constitutes a breach of duty of fair representation under the Act. Plaintiff further argues that Defendant Central Gulf Lines breached the collective bargaining agreement with regard to its termination of his employment without just cause.

## I. STATEMENT OF FACTS

The relevant facts in this case are as follows. The plaintiff, a Chief Mate aboard the ship "M/V Green Lake" was discharged by his employer, Central Gulf Lines, Inc. ("CGL") on December 28, 1995. Defendants argue that he was fired for insubordination to the ship's captain (publicly referring to the captain in an obscene and vulgar manner), sleeping on watch, and violation of safety procedures (failing to use a safety belt while on a platform above the flying bridge). Following the termination, the plaintiff filed a grievance with MMP which was processed through a multi-tiered grievance process consisting of (1) investigation of the claim, (2) attempts to resolve at the local level, (3) attempts to resolve with senior management, (4) referral to counsel for an opinion on the likelihood of success on the merits, (5) a decision on whether to arbitrate, and (6) appeal of an adverse arbitration decision to boards of appeal within the union. Defendant argues that during the grievance investigation process, (1) the plaintiff admitted using vulgar language, (2) two witnesses claimed having seen the plaintiff asleep on watch, and (3) the plaintiff admitted not using a safety belt. Plaintiff, however, argues that the charges underlying the decision to terminate his employment are not a valid justification to support his termination for cause. In particular, plaintiff claims that (1) he was goaded into using the vulgar language, (2) he was not asleep on watch, and (3) he used his best judgment to decide that a safety belt was not required in the instance cited.

In accordance with the multi-tiered grievance process, the grievance was referred to MMP's counsel who, on June 4, 1996, recommended against arbitration, believing there was no reasonable probability of success at arbitration. MMP then informed the plaintiff of his right to appeal by a letter dated July 11, 1996. MMP placed the appeal on the agenda of regularly scheduled union board meetings to be held on December 6, 1996. The plaintiff failed to receive notification of these meetings, and neither he nor his attorney appeared. The MMP grievance appeal boards decided the appeal despite plaintiff's absence, according to regular custom and procedure.

The union boards affirmed the decision of the MMP counsel, and informed the plaintiff that his grievance would not be taken to arbitration by a letter dated December 18, 1996. In this same letter, MMP informed him that the appeals he had taken "exhausted all internal union remedies." On June 4, 1997, plaintiff commenced this action. On March 2, 1998,

during plaintiff's deposition for this case, defendants first.learned that plaintiff had not been notified of the December 6, 1996 appeal meetings. Upon this information, MMP then informed plaintiff by letter dated March 11, 1998, of its willingness to rescind the December 6, 1996 decision and afford plaintiff another appeal · hearing. Plaintiff declined this offer, having already· commenced this action in court.

## II. *BACKGROUND*

Summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, based on the pleadings, depositions, interrogatories, admissions, and affidavits, if any. *See* Fed.R.Civ.P 56(c). A genuine dispute as to material fact exists if a reasonable juror could return a verdict for the non-moving .party. On a motion for summary judgment, this Court must view all evidence and related inferences in the light most favorable to the non-moving party. *See Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). In this case, once the defendant has used the pleadings, discovery, and affidavits to demonstrate that there is no genuine dispute of material fact, the plaintiff must show evidence beyond mere allegations sufficient to demonstrate that he can carry his burden at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the plaintiff fails to do so, summary judgment must issue.

 In order to succeed in this hybrid claim, plaintiff must establish not only that the employer breached the collective bargaining agreement, but ·also that the union breached its duty of fair representation. *See Miller v. United States Postal Service,* 985 F.2d 9, 11 (1st Cir.1993); *Mensah v. Newton Buying Corp.,* 927. F.Supp. 518, 520 (D.Mass.1996). Because these claims are inextricably linked, the failure to prove either one results in a failure of the entire action. *See Miller,*

985 F.2d at 11. Employees·have no absolute right to arbitration regardless of the provisions of the collective bargaining agreement. *See Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967); *Ayala v. Union de Tronquistas de Puerto Rico,* 74 F.3d 344, 345 (1st Cir. 1996). The Court has recognized that to hold otherwise would stifle the entire grievance procedure; a union is entitled to decide that certain grievances lack sufficient merit to justify arbitration without breaching its duty of fair representation. *See Vaca,* 386 U.S. at 193, 87 S.Ct. at 918. This Circuit recognizes that in the context of employee grievances, the duty of fair representation is not a "straitjacket" which forces unions to pursue grievance remedies to "the bitter end." *See Ayala,* 74 F.3d at 345.

 A union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in· bad faith." *See Vaca,* 386 U.S. at 190, 87 S.Ct. at 916; *see also Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991); *Ayala,* 74 F.3d at 346. A union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *See Vaca,* 386 U.S. at 191, 87 S.Ct. at 917; *Williams v. Sea–Land Corp.,* 844 F.2d 17, 21 (1st Cir. 1988). Furthermore, a union's actions are arbitrary only if, "in light of the factual and legal landscape at the time of the union's actions," its behavior is so far beyond a "wide range of reasonableness" that it is irrational. *See Air Line Pilots,* 499 U.S. at 67, 111 S.Ct. at 1130; *Miller,* 985 F.2d at 12.

 A union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it processed the ˙grievance short of arbitration. *See Vaca,* 386 U.S. at 192, 87 S.Ct. 903 at 918, 17 L.Ed.2d 842; *Williams,* 844 F.2d at 21. Indeed, a union is accorded "considerable discretion" in dealing with grievance mat-

ters, and it may rightfully decide not to press the claims of an individual employee. *See Ayala,* 74 F.3d at 346. Any substantive examination of a union's performance must be "highly deferential." *See Air Line Pilots,* 499 U.S. at 78, 111 S.Ct. at 1135; *Miller,* 985 F.2d at 12. Even negligence or erroneous judgment on the part of the union does not meet the high threshold of "arbitrary, discriminatory, or bad faith" actions. *See Miller,* 985 F.2d at 12. Thus, a union's failure to take a grievance to arbitration is a breach only when it is truly arbitrary or irrational. *See id.*

### III. *DISCUSSION*

The primary question for this Court, therefore, is whether MMP's decision not to arbitrate the grievance was truly arbitrary, discriminatory, or in bad faith based on the facts at the time of the decision. Although the pleadings and affidavits may present a dispute of fact as to the underlying events of the termination itself—the material facts for purposes of this motion relate only to whether the union's decision not to arbitrate was arbitrary, discriminatory, or in bad faith—in light of the facts known to it at the time of the decision. Thus, summary judgment must issue unless plaintiff offers some evidence that the "handling of the grievance procedure itself" was "materially deficient." *See Early v. Eastern Transfer,* 699 F.2d 552, 556 (1st Cir.1983); *Mensah v. Newton Buying Corp.,* 927 F.Supp. 518, 522 (D.Mass.1996). The plaintiff has not done so in this case.

 There is no evidence in the record to support any reasonable finding that the union's handling of the grievance was discriminatory. In fact, the plaintiff admitted in his deposition that union representatives were at no time personally antagonistic towards him. There is no assertion of discrimination on the basis of any protected status or unfair classification. At most, the plaintiff asserts that the union treated his grievance differently because it was lodged against a captain. As support for this assertion, the plaintiff points to the minutes of the December 6, 1996 appeal hearing, where the union stated that, "demeaning a ship's master in the presence of other officers ... tends to undermine the authority of the Master and [the union] would be charting new ground if [it tried] to establish that this was not just cause for discharge." Even drawing all inferences in favor of the plaintiff, this statement could not reasonably be interpreted to infer discrimination or bad faith by the union. Aside from plaintiff's allegations, neither the minutes of the December 6, 1996 appeal hearing, nor any other evidence substantiate this claim. Regardless, union action is actionable only if it is discrimination on the basis of a protected status or unfair classification. *See Vaca,* 386 U.S. at 177–79, 87 S.Ct. 903, 909–911, 17 L.Ed.2d 842; *see also Lore v. Runyon, Postmaster,* 82 F.3d 403, 403 (1st Cir. 1996). Defendant's decision was not discriminatory.

 There is no evidence in the record to support any reasonable finding that the decision not to arbitrate was in bad faith. Plaintiff argues that MMP's failure to notify him of the December 6, 1996 appeal meeting violates its duty of fair representation. However, assuming arguendo that MMP failed to notify the plaintiff, even negligence or erroneous judgment on the part of the union does not meet the high threshold of "arbitrary, discriminatory, or bad faith" actions. *See Miller,* 985 F.2d at 12. The plaintiff, at most, has shown mere error in its failure to notify him of the December 6, 1996 meeting. This is not bad faith, however, for grievance processes can not be expected to be error free. *See Sear v. Cadillac Automobile Co. of Boston,* 654 F.2d 4, 7 (1st Cir.1981). In fact, after learning of plaintiff's failure to receive notice of the December 6, 1996 hearing, the union offered the plaintiff an additional opportunity to appeal the decision in March, 1998. If anything, the union acted in good faith by (1) allowing plaintiff an additional opportunity to appeal the decision, and (2)

**6**

extending an "open offer" to submit the grievance to arbitration upon the production of any witness who could corroborate plaintiff's claims. No such witnesses were ever produced. Defendant's decision was not in bad faith.

■ Furthermore, there is no evidence to substantiate that the union's decision was arbitrary. In light of the factual and legal landscape at the time of its actions, its behavior was not so far beyond a "wide range of reasonableness" that it was "irrational." *See Air Line Pilots*, 499 U.S. at 67, 111 S.Ct. at 1130,; *Miller*, 985 F.2d at 12; *Chaparro–Febus v. Int'l Longshoremen Ass'n*, 983 F.2d 325, 330 (1st Cir. 1992). A decision not to arbitrate a claim is not, in and of itself, an arbitrary act. *See Hussey v. Quebecor Printing Providence, Inc.*, 2 F.Supp.2d 217, 224 (D.R.I. 1998), *citing, Williams*, 844 F.2d at 19. Before making its decision, and after a thorough investigation of the grievance, the union met with its legal counsel and considered and balanced (1) the facts of the case, (2) the likelihood of success in arbitration, (3) the cost of arbitration, (4) the union's credibility with the employer, and (5) the impact of pursuing the grievance on other union members. These are proper factors to consider in reaching a rational, non-arbitrary decision. *See, e.g., Hussey*, 2 F.Supp.2d at 225; *Mensah*, 927 F.Supp. at 522–23; *Ayala v. Union de Tronquistas de Puerto Rico*, 913 F.Supp. 74, 79–80 (D.P.R.1995). Defendant's decision was not arbitrary.

■ Finally, plaintiffs argue that whether a union's conduct is arbitrary, discriminatory, or in bad faith is a matter of fact to be determined by a jury. However, the law is clear in this Circuit that in the absence of evidence by which a jury could reasonably find for the plaintiff, summary judgment is proper. *See Ayala*, 74 F.3d at 346; *Miller*, 985 F.2d at 12; *Hussey*, 2.F.Supp.2d at 222; *Mensah*, 927 F.Supp. at 522. Given the undisputed facts surrounding the union's decision, viewed even in the light most favorable to the plaintiff,

the Court can not conclude that defendant's decision was arbitrary, discriminatory, or in bad faith.

The motion is allowed. The case is dismissed.

SO ORDERED.