Dagesse v. Plant Hotel, NV, et al.    CV-98-713-B    01/05/00   .P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Daniel Dagesse & Elaine Dagesse**

    **v.**                              Civil No. 98-713-B
                                   Opinion No. 2000 DNH 009

**Plant Hotel N.V.,**
**Oranjestad Property Management N.V.,**
**and Marriott International**


**MEMORANDUM AND ORDER**

Daniel Dagesse contends that he suffered serious injuries when he slipped and fell in his hotel room at the Aruba Marriott Resort.  He sued Plant Hotel N.V., the limited liability company that owns the resort, Oranjestad Property Management N.V., Plant Hotel's parent company, Marriott Aruba N.V., the company that manages the resort, and Marriott International, Inc., a corporation that Dagesse claims was an agent and management company for Plant Hotel and Oranjestad.  Elaine Dagesse, Daniel's wife, has sued the same defendants alleging loss of consortium.

In a previous order, I granted Marriott Aruba's motion to dismiss for lack of personal jurisdiction.  See Dagesse v. Marriott Aruba N.V., Civil No. 98-713-B (D.N.H. Aug. 19, 1999).  Plant Hotel and Oranjestad have now filed similar motions.

The Dagesses cite two new jurisdictional facts to support

their claim that the court has personal jurisdiction over Plant

Hotel and Oranjestad. In addition to the New Hampshire contacts they presented in opposition to Marriott Aruba's motion to dismiss, the Dagesses contend that Marriott International, acting as an agent for Plant Hotel and Oranjestad, (1) maintained an interactive internet web site that was accessible from New Hampshire; and (2) was responsible for television advertisements for the Aruba Marriott Resort that Elaine Dagesse viewed from her New Hampshire home. In the discussion that follows, I consider these new allegations in combination with the jurisdictional facts previously alleged by the Dagesses.

## I. Background[1]

Daniel and Elaine Degasse made travel arrangements for a trip to Aruba in November 1995. The Dagesses booked their flights through Berlin Travel, a travel agency located in Berlin, New Hampshire, but made their own hotel reservations at the Aruba Marriott Resort in Oranjestad, Aruba. They made and confirmed their hotel reservation from New Hampshire through a representative of Marriott International by calling the company's toll-free telephone reservation line. A Marriott reservations officer

---

[1] Unless otherwise indicated, these background facts are adopted from my previous order granting Marriott Aruba's motion to dismiss. See Dagesse v. Marriott Aruba N.V., Civil No. 98-713-B, slip op. at 2-5 (D.N.H. Aug. 19, 1999).

-3-

accepted and confirmed the reservation and mailed a confirmation letter to the Dagesses's New Hampshire residence. The Dagesses had never been guests at the resort before, but selected it because of Marriott's general reputation for comfort and quality. The Dagesses never contacted the Aruba Marriott Resort directly, and at all times were under the impression that they were dealing with Marriott International. Before the Dagesses made their travel arrangements, Elaine Dagesse saw television advertisements for the Aruba Marriott Resort while at her home in New Hampshire. See Pls.' Objection (Doc. #25) at 2, 6, 10, 14, and attached Elaine Dagesse Aff. ¶ 3.

The Dagesses made their trip to Aruba in November 1995. On or about November 25, 1995, Daniel Dagesse walked into the bathroom of his guestroom at the resort and slipped and fell in a pool of standing water that apparently had accumulated because of an unspecified plumbing problem. Dagesse allegedly suffered severe injuries as a result of the fall.

The Dagesses claim that Plant Hotel, as the owner of the Aruba Marriott Resort, owed them a duty of care to maintain their guestroom in a reasonably safe condition and to correct or warn them of any dangerous conditions therein. The Dagesses assert that Plant Hotel either knew of the plumbing problem in its

-4-

guestroom or should have known about it through the exercise of reasonable care. Accordingly, the Dagesses maintain that their injuries are the result of Plant Hotel's negligent maintenance of their guestroom and/or Plant Hotel's failure to warn them of the hazardous conditions present therein.

The Dagesses also claim that Oranjestad, as the parent company of Plant Hotel, owed them a duty to ensure that its subsidiary company maintained the Aruba Marriott Resort in a reasonably safe condition, and that its failure to supervise the business affairs of Plant Hotel ultimately led to the accident. Similarly, the Dagesses claim that defendant Marriott International, the alleged management company for Plant Hotel and Oranjestad, owed them a duty to ensure that the Aruban defendants maintained the Marriott Aruba Resort in a reasonably safe condition, and that its failure to do so ultimately led to the accident.

Plant Hotel is a limited liability company under the laws of Aruba. See Defs.' Mot. to Dismiss (Doc. #20), attached Scott Ringer Aff. ¶2. Plant Hotel has a principal place of business in Palm Beach, Aruba, and is authorized to do business only in Aruba. See id. ¶¶ 2, 3. Oranjestad, Plant Hotel's parent company, is an Aruban corporation that is not authorized to

-5-

conduct business in the state of New Hampshire. See id., attached Oranjestad Property Management, N.V. Representative Aff. (Ebbo Ruiter) ¶¶ 2, 3. Oranjestad does not have a registered agent in New Hampshire, nor does it have any employees, mailing address, bank account or office in New Hampshire. See id. ¶¶ 4, 5, 6, 8, 9. The Dagesses claim that Marriott International serves as the management company for Plant Hotel and Oranjestad, a claim that that Marriott International denies. See Rider to Writ of Summons (Doc. #4) ¶ 26; Def. Marriott International Inc.'s Answer To Pls.' Compl. (Doc. #6) ¶ 26.

The Dagesses also contend that Marriott International maintains an interactive internet web site that is accessible in New Hampshire. According to evidence provided by the Dagesses, the web site advertises the Aruba Marriott Resort, provides a toll-free number for making reservations by telephone, and allows users to make hotel reservations over the internet. See Pls.' Objection (Doc. #25) at 2, 6, 8, 10, and attached Pls.' Ex. B.

## II. Standard of Review

When a defendant contests personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that a basis for asserting jurisdiction exists. See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st

Cir. 1998); <u>Rodriquez v. Fullerton Tires Corp.</u>, 115 F.3d 81, 83 (1st Cir. 1997).  In this case, in which no evidentiary hearing has been held, I hold the Dagesses to a prima facie standard. <u>See</u> <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995) (citing <u>United Elec. Radio and Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp.</u>, 987 F.2d 39, 43 (1st Cir. 1993) [hereinafter <u>Pleasant St. II</u>]).

To make a prima facie showing of jurisdiction, a plaintiff may not rest on the pleadings.  Rather, he or she must "adduce evidence of specific facts" that support jurisdiction.  <u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F.3d 138, 145 (1st Cir. 1995); <u>Pleasant St. II</u>, 987 F.2d at 44.  In conducting my analysis, I take the facts offered by the plaintiff as true and construe them in the light most favorable to the plaintiff's jurisdictional claim.  <u>See</u> <u>Massachusetts School of Law</u>, 142 F.3d at 34; <u>Foster-Miller</u>, 46 F.3d at 145.  I do not act as a fact-finder; instead I determine "whether the facts duly proffered, [when] fully credited, support the exercise of personal jurisdiction."  <u>Rodriquez</u>, 115 F.3d at 84 (citing <u>Boit v. Gar-Tec Prods., Inc.</u>, 967 F.2d 671, 675 (1st Cir. 1992)).

While the prima facie standard is liberal, I need not "'credit conclusory allegations or draw farfetched inferences.'"

-7-

Massachusetts School of Law, 142 F.3d at 34 (quoting

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir.

1994)).  I also consider facts offered by the defendants, but

only to the extent that they are uncontradicted.  See id.


### III.  Analysis

For purposes of assessing personal jurisdiction over a non-

resident defendant, "a federal court exercising diversity

jurisdiction 'is the functional equivalent of a state court

sitting in the forum state.'"  Sawtelle, 70 F.3d at 1387 (quoting

Ticketmaster, 26 F.3d at 204).  Accordingly, I must determine

whether jurisdiction is proper under both the New Hampshire long-

arm statute and the due process requirements of the federal

constitution.  See id.; Foster-Miller, 46 F.3d at 144.  The New

Hampshire long-arm statute applicable to foreign corporations,

see Rev. Stat. Ann. §293-A:15.10 (Supp. 1998), has been

interpreted to be coterminous with federal constitutional limits

on jurisdiction.  See Phillips Exeter Academy v. Howard Phillips

Fund, Inc., 196 F.3d 284, 287 (1st Cir. 1999); Sawtelle, 70 F.3d

at 1388 (citing McClary v. Erie Engine & Mfg. Co., 856 F. Supp.

52, 55 (D.N.H. 1994)).  Therefore, I proceed directly to the

constitutional due process analysis.

The due process clause precludes a court from asserting jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Because the constitutional inquiry is founded on "'traditional conception[s] of fair play and substantial justice,'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)) (alteration in original), determining personal jurisdiction has always been "more an art than a science." Ticketmaster, 26 F.3d at 206 (quoting Donatelli v. National Hockey League, 893 F.2d 459, 468 n.7 (1st Cir. 1990)).

The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King, 471 U.S. at 474 (citing International Shoe, 326 U.S. at 316); see also Sawtelle, 70 F.3d at 1388. The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). A defendant cannot be subjected to a forum

state's jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts.  Burger King, 471 U.S. at 475 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); World-Wide Volkswagen, 444 U.S. at 299) (internal quotation marks omitted).  Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

A court may assert authority over a defendant by means of either general or specific jurisdiction.  See Massachusetts School of Law, 142 F.3d at 34 (citing Donatelli, 893 F.2d at 462-63); Foster-Miller, 46 F.3d at 144.  A defendant who has engaged in continuous and systematic activity in a forum is subject to general jurisdiction in that forum with respect to all causes of action, even those unrelated to the defendant's forum-based activities.  See Phillips Exeter, 196 F.3d at 288 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Donatelli, 893 F.2d at 462-63).  A court may exercise specific jurisdiction, by contrast, only when the cause of action arises from, or relates to, the defendant's contacts with the forum.  See id.; Pritzker, 42 F.3d at 60.

## A. Specific Jurisdiction

The First Circuit has developed a tripartite test for determining whether an exercise of specific jurisdiction is consistent with due process. The analysis consists of an inquiry into (1) relatedness, (2) purposeful availment (or "minimum contacts"), and (3) reasonableness. See Massachusetts School of Law, 142 F.3d at 35; Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712-13 (1st Cir. 1996), cert. denied, 520 U.S. 1155 (1997). An affirmative finding on each of these three components is required to support an assertion of specific jurisdiction. See Phillips Exeter, 196 F.3d at 288.

In the present case, I focus my attention on the first element of the tripartite test. Under the relatedness requirement, I must determine whether the plaintiff's claim arises out of, or is related to, the defendant's contacts with the forum. See id.; Massachusetts School of Law, 142 F.3d at 35. The First Circuit has interpreted relatedness to require a connection of proximate cause between the defendant's contacts and the plaintiff's claim. See Nowak, 94 F.3d at 715. This proximate cause standard, which highlights the importance of foreseeability to the due process inquiry, "enable[s] defendants better to anticipate which conduct might subject them to a

state's jurisdiction." Id. When, as in this case, the plaintiff's claim sounds in tort, the proximate cause standard requires the plaintiff to demonstrate both "'cause in fact (i.e., the injury would not have occurred "but for" the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action).'" Massachusetts School of Law, 142 F.3d at 35 (quoting United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992), appeal after remand, 987 F.2d 39 (1st Cir. 1993)).

The Dagesses have alleged that Plant Hotel and Oranjestad, acting through their agent Marriott International,[2] had the

_____

[2] The Dagesses claim that Marriott International acted as an agent of Plant Hotel and Oranjestad by accepting and confirming reservations for the Aruba Marriott Resort, advertising the resort on television, maintaining a toll-free reservation line, and operating an internet web site that featured the resort. See Pls.' Objection (Doc. #25) at 5, 6, 10. Plant Hotel and Oranjestad dispute the existence of an agency relationship. See Defs.' Reply (Doc. #26) at 3 n.1. For purposes of this motion, I assume that the agency relationship existed. Under basic principles of agency law, forum-related contacts made by an agent acting within the scope of an agency relationship are attributable to the principal. See Noonan v. Winston Co., 135 F.3d 85, 90 n.3 (1st Cir. 1998); Sawtelle, 70 F.3d at 1389 n.4; Donatelli, 893 F.2d at 466-67; Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116, 120-21 (2d Cir. 1967); Frummer v. Hilton Hotels Int'l, Inc., 227 N.E.2d 851, 853-54 (N.Y. 1967). This issue of agency is distinct from the issue of whether a parent corporation is subject to personal jurisdiction

following contacts with New Hampshire:

1.  Marriott International was responsible for television advertisements promoting the Aruba Marriott Resort, which Elaine Dagesse viewed at her New Hampshire home prior to making the decision to travel to Aruba. See Pls.' Objection (Doc. #25) at 2, 6, 10, 14 and attached Elaine Dagesse Aff. ¶3.[3]

2.  Marriott International maintained an interactive internet web site, accessible from New Hampshire, that advertised the Aruba Marriott Resort, provided a toll-free telephone number for making hotel reservations, and allowed users to make hotel reservations directly over the internet. See id. at 2, 6, 7-8 and Ex. B.[4]

---

based on the contacts of its subsidiary, a question that depends upon the piercing of the corporate veil. See, e.g., Diaz De Castro v. Sanifill, Inc., --- F.3d ---, No. 99-1504, 1999 WL 1085414, at *1-3 (1st Cir. Dec. 8, 1999). Diaz De Castro does not specifically address the agency argument, and I do not interpret it to preclude the agency analysis set forth in previous First Circuit opinions.

[3] The defendants have submitted evidence that Marriott International did not specifically target New Hampshire with television advertising for the Aruba resort. See Defs.' Reply (Doc. #26) at 9 & n.8 and attached Jayne Hillner Aff. ¶¶ 2-4. Nevertheless, the Dagesses have proffered evidence that Elaine Dagesse saw television advertisements for the Marriott Aruba Resort while at home in New Hampshire, see Pls.' Objection (Doc. #25), Elaine Dagesse Aff. ¶ 3, and I credit this evidence, as I must under the prima facie standard.

[4] The parties disagree as to when the internet web site was established, as well as when it became interactive. Compare Pls.' Objection (Doc. #25) at 2, 6, and Ex. A with Defs.' Reply (Doc. #26) at 5-6 n.3, and attached Scott Davis Aff. ¶¶ 3-5. I need not enter this thicket, because I conclude that even if the web site was established when the Dagesses claim and was fully interactive at that time, I lack the basis for exercising jurisdiction over Plant Hotel and Oranjestad.

3.    The Dagesses made their hotel reservations from their New Hampshire home by telephoning a Marriott International representative in the United States.[5] A Marriott International representative mailed a confirmation of the reservations to the Dagesses at their New Hampshire home. See id. at 2, 5; Defs.' Mot. to Dismiss (Doc. #20), attached Daniel S. Dagesse Aff. ¶¶ 3, 4.[6]

---

[5] The telephone call placed by the Dagesses over the toll-free line was received by a Marriott International representative at an undisclosed location. The plaintiffs have provided no evidence that the call was received in New Hampshire.

[6] The Dagesses also allege, without proffering any supporting evidence, that Marriott International is registered to do business in New Hampshire and has a resident agent in New Hampshire. See Pls.' Objection (Doc. #25) at 5. Even assuming that these facts are true and that they subject Marriott International to personal jurisdiction in New Hampshire, but see Sandstrom v. ChemLawn Corp., 904 F.2d 83, 89-90 (1st Cir. 1990) (holding that obtaining license to do business in state, appointment of agent for service of process, and recruitment of personnel by advertisement in state, in themselves, were not sufficient to support general jurisdiction over defendant), the acts of registering to do business and appointing a resident agent are not attributable to Plant Hotel and Oranjestad because there has been no allegation that they were performed in connection with the agency relationship. The rule that an agent's forum-related contacts are attributable to the principal is designed to prevent a principal from evading personal jurisdiction by means of the agency relationship. Such attribution, however, only occurs when the agent's activities fall within the scope of the agency relationship. Cf. Donatelli, 893 F.2d at 466-67 (suggesting that the forum-related contacts of a partner are not attributable to the partnership as a matter of agency law if "the partner has acted beyond the scope of his legitimate duty or authority"). Any other rule of attribution would discourage the use of agents by raising the specter that principals with attenuated contacts with a forum would be subject to personal jurisdiction in that forum based solely on the more

-14-

Based on this evidence, the Dagesses are unable to demonstrate that Marriott International's contacts with New Hampshire were both the factual and legal cause of the injuries for which they seek relief.  The Dagesses do not allege that they visited the Marriott web site prior to their trip; thus the web site is not related to their claim even as a matter of factual causation.  Moreover, assuming that the television advertisements, the receiving and confirmation of reservations through the toll-free telephone number, and the mailing of the reservation confirmation were factual causes of the injuries suffered by the Dagesses, they were not legal causes of those injuries because they did not make it foreseeable that the Dagesses would be injured by negligent maintenance of their hotel room.  See Nowak, 94 F.3d at 716 (concluding that plaintiff's wife's fatal injuries were not proximately caused by defendant's forum-related contacts).

The First Circuit has recognized a narrow exception to the proximate cause standard that applies "[w]hen a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose." Id.

_____

extensive, but unrelated, contacts of their agents.

at 715.  In <u>Nowak</u>, the plaintiff's wife drowned in the swimming pool of a Hong Kong hotel where the couple was staying during the husband's business trip.  <u>See</u> <u>id.</u> at 711.  When the plaintiff brought a wrongful death action against the foreign corporation that owned the hotel, the court found that personal jurisdiction could properly rest upon an extensive series of communications between the defendant corporation and the plaintiff's employer.  <u>See</u> <u>id.</u> at 716.  The court concluded that "[w]hile the nexus between [the defendant's] solicitation of [the plaintiff's employer's] business and [the plaintiff's wife's] death does not constitute a proximate cause relationship, it does represent a meaningful link between [the defendant's] contact and the harm suffered."  <u>Id.</u>

In the present case, however, the Dagesses have failed to adduce any evidence that either Plant Hotel or Oranjestad, whether acting directly or through Marriott International, targeted them or any other New Hampshire residents in an ongoing and ultimately successful effort to further a business relationship.  Simply put, none of the facts produced by the Dagesses suggest the sort of established business relationship that existed between the defendant and the plaintiff's employer in <u>Nowak</u>.

-16-

Because I conclude that the Dagesses have failed to satisfy the relatedness requirement of the specific jurisdiction test, I need not address the remaining requirements. The Dagesses have failed to make a prima facie showing of specific jurisdiction over either Plant Hotel or Oranjestad.

**B. General Jurisdiction**

As noted above, a court may assert general jurisdiction over a defendant even when the cause of action is not related to the defendant's forum-based conduct, provided that the defendant has engaged in "the 'continuous and systematic' pursuit of general business activities in the forum state." Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984) (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 448 (1952)); see also Helicopteros, 466 U.S. at 415-16; Massachusetts School of Law, 142 F.3d at 34. In other words, an exercise of general jurisdiction does not require relatedness, but it does require that the defendant's contacts with the forum state be considerably more extensive than the "minimum contacts" necessary for specific jurisdiction. See Donatelli, 893 F.2d at 463 (noting that "'[a]lthough minimum contacts suffice in and of themselves for specific jurisdiction . . . , the standard for general jurisdiction is considerably more stringent'") (quoting Glater, 744 F.2d at 216) (alteration in original).

Because the Dagesses's jurisdictional claim is based on an agency theory, I must determine whether Marriott International, acting as an agent for Plant Hotel and Oranjestad, engaged in continuous and systematic activities that subject the Aruban

-18-

defendants to general jurisdiction in New Hampshire.[7]  I have previously determined, when deciding the motion to dismiss filed by Marriott Aruba, that receiving a single telephone call from New Hampshire and mailing a single confirmation letter into New Hampshire is not sufficient to support a claim of general jurisdiction against either Marriott International or any principal it represented.  See Dagesse v. Marriott Aruba N.V., Civil No. 98-713-B, slip op. at 10-11 (D.N.H. Aug. 19, 1999).  I must now determine whether the addition of the television advertisements and the interactive internet web site, taken in combination with the other forum-related contacts, are enough to lift the Dagesses over the high hurdle necessary to show general jurisdiction.  For reasons set forth below, I conclude that the two new jurisdictional facts do not appreciably strengthen the Dagesses's jurisdictional claim.

   **1.  Television Advertisements**

---

[7]  Once again, I accept for the purposes of jurisdictional analysis the Dagesses's contention that Marriott International acted as an agent of the Aruban defendants when accepting and confirming reservations, advertising the resort on television, maintaining the toll-free reservation line, and operating the internet web site.  See note 2.  However, any jurisdiction conferred on Marriott International by virtue of its registration to do business in New Hampshire or the appointment of a resident agent is not attributable to the Aruban defendants.  See note 6.

The evidence that Elaine Dagesse viewed advertisements for the Aruba Marriott Resort while watching television at her home in New Hampshire does little to enhance the Dagesses's jurisdictional claim. Even assuming that the advertisements were aired on a local television station,[8] and even taken together with the other forum-related contacts asserted by the Dagesses, such activities do not constitute continuous and systematic contacts and therefore cannot support an assertion of general jurisdiction. C.f. Glater, 744 F.2d at 215, 217 (concluding that advertising in trade journals circulated in state, employment of eight sales representatives in state, and sale of products to

---

[8] The Dagesses offer no evidence that the advertisements were broadcast over a New Hampshire television station. In her deposition, Elaine Dagesse expressed uncertainty when asked whether she would have seen the advertisements if the Dagesses received only local television stations. See Defs.' Reply (Doc. #26), attached Dep. of Elaine Dagesse at 6-7. The defendants, by contrast, have produced evidence showing that Marriott International did not advertise the Aruba Marriott Resort on local New Hampshire television stations. See id., attached Joyce Hillner Aff. ¶ 2-4. While the First Circuit generally discusses the purposeful availment requirement in the context of specific jurisdiction, I note that in the absence of some affirmative showing by the Dagesses that Marriott International purposefully directed the advertisements at the New Hampshire market, treating the advertisements as a basis for personal jurisdiction in New Hampshire "would, in effect, embrace the 'stream of commerce' theory of personal jurisdiction which [the First Circuit] has . . . rejected." Sawtelle, 70 F.3d at 1393; see also Boit, 967 F.2d at 681-83.

-20-

distributors in state were not sufficient to support general jurisdiction); Seymour v. Parke, Davis & Co., 423 F.2d 584, 585, 587 (1st Cir. 1970) (concluding that employment of approximately six salesmen in state and advertisement in state were insufficient to support general jurisdiction).

## 2. Interactive Internet Web Site

Although the evidence that Marriott International advertises and takes reservations for the Aruba Marriott Resort on an internet web site requires a more elaborate analysis, it ultimately does not alter my conclusion that the New Hampshire-related activities conducted by Marriott International on behalf of Plant Hotel and Oranjestad were not continuous and systematic and thus do not subject the Aruban defendants to general jurisdiction in New Hampshire.

While the creation and proliferation of the internet and the world wide web are relatively recent occurrences,[9] a large number of federal courts have already considered the effects of a defendant's internet activities on personal jurisdiction. Because the First Circuit has yet to address this issue, I look to the opinions of these other courts for guidance.

Unfortunately, many of the previously decided cases have limited utility for the purpose of deciding the Dagesses's jurisdictional claim. The majority of these opinions focus, either explicitly or implicitly, on whether a defendant's

---

[9] For a detailed discussion of the internet and the world wide web, see Reno v. American Civil Liberties Union, 521 U.S. 844, 849-53 (1997).

internet activities support an exercise of specific -- rather than general -- jurisdiction, an issue that I have already resolved under the First Circuit's relatedness requirement. <u>See Molnlycke Health Care AB v. Dumex Med. Surgical Prods., Ltd.</u>, 64 F. Supp.2d 448, 452 n.3 (E.D. Pa. 1999) (noting that "most of the cases premising jurisdiction on internet activity have ruled on the basis of specific jurisdiction"); <u>Coastal Video Communications, Corp. v. Staywell Corp.</u>, 59 F. Supp.2d 562, 570 n.6 (E.D. Va. 1999) (observing that "[t]he vast majority of Internet-based personal jurisdiction cases involve specific jurisdiction"). Moreover, many of the decided cases involve claims, such as trademark infringement and defamation, that arise directly out of the defendant's internet activities.[10] In the

_____

[10] <u>See, e.g.</u>, <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1319 (9th Cir. 1998) (trademark dilution); <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d 414, 415 (9th Cir. 1997) (service mark infringement); <u>CompuServe, Inc. v. Patterson</u>, 89 F.3d 1257, 1261 (6th Cir. 1996) (seeking declaratory judgment that plaintiff had not infringed on defendant's common-law trademarks); <u>Stomp, Inc. v. NeatO, LLC</u>, 61 F. Supp.2d 1074, 1075 (C.D. Cal. 1999) (seeking declaratory judgment against patent infringment); <u>Rannoch, Inc. v. Rannoch Corp.</u>, 52 F. Supp.2d 681, 682 (E.D. Va. 1999) (trademark infringement); <u>Bochan v. La Fontaine</u>, 68 F. Supp.2d 692, 694 (E.D. Va. 1999) (libel); <u>Hasbro, Inc. v. Clue Computing, Inc.</u>, 994 F. Supp. 34, 36 (D. Mass. 1997) (trademark infringement); <u>TELCO Communications v. An Apple A Day</u>, 977 F. Supp. 404, 405 (E.D. Va. 1997) (defamation and related claims); <u>Digital Equip. Corp. v. AltaVista Tech., Inc.</u>, 960 F. Supp. 456, 459 (D. Mass. 1997) (breach of trademark licensing agreement,

-23-

present case, as discussed above, the Dagesses's claims are not proximately related to Marriott International's web site.

The usefulness of the existing case law is also limited by the reluctance of some courts to apply traditional due process principles to a defendant's internet activity. The Supreme Court has long recognized that personal jurisdiction must adjust to technological and commercial innovation. In <u>Hanson v. Denckla</u>, the Court acknowledged that "[a]s technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase." 357 U.S. 235, 250-51 (1958). More recently, in <u>Burger King</u>, the Court remarked that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is

---

trademark and servicemark infringement, and trademark dilution); <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119, 1121 (W.D. Pa. 1997) (trademark dilution, infringement, and false designation); <u>Heroes, Inc. v. Heroes Found.</u>, 958 F. Supp. 1, 1 (D.D.C. 1996) (trademark infringement); <u>Bensusan Restaurant Corp. v. King</u>, 937 F. Supp. 295, 298 (S.D.N.Y. 1996) (trademark infringement and dilution), <u>aff'd</u>, 126 F.3d 25 (2d Cir. 1997); <u>Maritz, Inc. v. Cybergold, Inc.</u>, 947 F. Supp. 1328, 1329 (E.D. Mo. 1996) (trademark infringement); <u>Inset Sys., Inc. v. Instruction Set, Inc.</u>, 937 F. Supp. 161, 162 (D. Conn. 1996) (trademark infringement).

conducted." 471 U.S. at 476.

The internet, which is a worldwide interconnected computer network, undoubtably challenges the "territorial-based concepts" that courts have traditionally applied to problems of personal jurisdiction. Digital Equip. Corp. v. AltaVista Tech., Inc., 960 F. Supp. 456, 462 (D. Mass. 1997); see also Maritz, Inc. v. Cybergold, Inc., 947 F. Supp. 1328, 1332 (E.D. Mo. 1996) ("The internet, a new and rapidly developing means of mass communication and information exchange, raises difficult questions regarding the scope of [a] court's personal jurisdiction in the context of due process jurisprudence."). At the same time, it is equally true that traditional constitutional requirements of foreseeability, minimum contacts, purposeful availment, and fundamental fairness must continue to be satisfied before any activity -- including internet activity -- can support an exercise of personal jurisdiction. See Molnlycke, 64 F. Supp.2d at 451 ("While the court acknowledges that new technology will necessarily have an effect on many aspects of the law, it is untenable to suggest that all prior jurisprudence is irrelevant to the internet."); Weber v. Jolly Hotels, 977 F. Supp. 327, 333 (D.N.J. 1997) ("Although the Internet is a new medium that raises new issues for the courts, district courts have successfully

applied the principles established by <u>International Shoe</u> and its progeny to cases involving the Internet.").

The consensus among courts that have focused explicitly on the issue is that general jurisdiction cannot not be founded solely on the existence of a defendant's internet web site. <u>See, e.g.</u>, <u>Molnlycke</u>, 64 F. Supp.2d. at 451, 453-54; <u>Broussard v. Deauville Hotel Resorts, Inc.</u>, No. CIV. A. 98-3157, 1999 WL 621527, at *2-3 (E.D. La. Aug. 13, 1999); <u>Barrett v. Catacombs Press</u>, 44 F. Supp.2d 717, 723-24 (E.D. Pa. 1999); <u>Millennium Enters., Inc. v. Millennium Music, LP</u>, 33 F. Supp.2d 907, 910 (D. Or. 1999).[11] As many courts have recognized, to hold that the mere existence of an internet web site establishes general jurisdiction would render any individual or entity that created such a web site subject to personal jurisdiction in every state. <u>See, e.g.</u>, <u>Molnlycke</u>, 64 F. Supp.2d at 451; <u>ESAB Group, Inc. v. Centricut, LLC</u>, 34 F. Supp.2d 323, 330 n.4 (D.S.C. 1999); <u>Hearst Corp. v. Goldberger</u>, No. 96 Civ. 3620 (PKL)(AJP), 1997 WL 97097,

---

[11] The court in <u>Mieczkowski v. Masco Corp.</u>, 997 F. Supp. 782 (E.D. Tex. 1998), exercised general jurisdiction based on a combination of the defendant's internet web site and the defendant's extensive traditional business contacts with the forum state. <u>See</u> <u>id.</u> at 785, 788. The court expressly declined to decide whether the internet web site alone was sufficient to confer general jurisdiction. <u>See</u> <u>id.</u> at 788.

-26-

at *1 (S.D.N.Y. Feb. 26, 1997). Such a rule "would eviscerate the personal jurisdiction requirement as it currently exists," Millennium Enterprises, 33 F. Supp.2d at 910 (citing McDonough v. Fallon McElligott, Inc., NO. CIV. 95-4037, 1996 WL 753991, at *3 (S.D. Cal. Aug. 5, 1996)) (internal quotation marks omitted), and I decline to adopt it.

Many courts facing questions of internet activity and personal jurisdiction have applied an analytical framework originally devised in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). Under the "sliding scale" developed in Zippo Manufacturing, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. at 1124. The "sliding scale" actually consists of three categories of web sites, organized by degree of interactivity, each of which has particular jurisdictional consequences:

> At one end of the spectrum are situations where a
> defendant clearly does business over the Internet. If
> the defendant enters into contracts with residents of a
> foreign jurisdiction that involve the knowing and
> repeated transmission of computer files over the
> Internet, personal jurisdiction is proper. At the
> opposite end are situations where a defendant has
> simply posted information on an Internet Web site which
> is accessible to users in foreign jurisdictions. A

> passive Web site that does little more than make
> information available for those who are interested in
> it is not grounds for the exercise of personal
> jurisdiction.  The middle ground is occupied by
> interactive Web sites where a user can exchange
> information with the host computer.  In these cases,
> the exercise of jurisdiction is determined by examining
> the level of interactivity and commercial nature of the
> exchange of information that occurs on the Web site.

Id. (internal citations omitted).

While some courts have found the Zippo Manufacturing framework useful for analyzing general jurisdiction,[12] the sliding scale sheds little light on the jurisdictional issue in the present case.  The Zippo Manufacturing analysis is most helpful when the web site at issue fits neatly into one of the extremes at either end of the spectrum.  The Marriott International web site, however, is best characterized as falling into the intermediate category.  See Hurley v. Cancun Playa Oasis Int'l Hotels, No. Civ.A. 99-574, 1999 WL 718556, at *3 (E.D. Pa. Aug. 31, 1999) (placing web site with identical capabilities in

---

[12]  Although Zippo Manufacturing dealt with specific jurisdiction, see Zippo Mfg., 952 F. Supp. at 1122, some courts have used the framework when determining whether general jurisdiction exists.  See, e.g., Soma Med. Int'l v. Standard Chartered Bank, --- F.3d --- , No. 98-4138, 1999 WL 1079850, at *3-4 (10th Cir. Dec. 1, 1999); Harbuck v. Aramco, Inc., No. CIV. A. 99-1971, 1999 WL 999431, at *5 (E.D. Pa. Oct. 21, 1999); Molnlycke, 64 F. Supp.2d at 451; Resnick v. Manfredy, 52 F. Supp.2d 462, 467-688 (E.D. Pa. 1999); Weber, 977 F. Supp. at 333-34.

the intermediate category).  As a result, application of the Zippo Manufacturing framework provides no clear answer to the jurisdictional question posed by Marriott International's web site.

More helpful are those cases that look beyond the degree of interactivity provided by the web site and instead emphasize the degree to which the defendant actually used its web site to conduct commercial or other activity with forum residents.  See, e.g., Coastal Video Communications, Corp. v. Staywell Corp., 59 F. Supp.2d 562, 571-72 (E.D. Va. 1999); ESAB Group, Inc. v. Centricut, LLC, 34 F. Supp.2d 323, 330-31 (D.S.C. 1999).  In ESAB Group, the court maintained:

> [M]erely categorizing a web site as interactive or passive is not conclusive of the jurisdictional issue.  General in personam jurisdiction must be based on more than a defendant's mere presence on the Internet even if it is an "Interactive" presence.  Rather, the critical issue for the court to analyze is the nature and quality of commercial activity actually conducted by an entity over the Internet in the forum state.

Id. at 330-331 (internal citations omitted).

Similarly, the court in Coastal Video explained:

> When conducting the general jurisdiction analysis, it is not enough to find that an interactive website has the potential to reach a significant percentage of the forum state's population.  Instead, for the contact to be continuous and systematic, there must be proof that the website is actually reaching a portion of the

state's population.  In traditional terms, the placing of a store or salesmen in a state is not sufficient to confer general jurisdiction over a defendant without some evidence that the store or salesmen actually generated sufficient sales in the forum state to be considered continuous and systematic.  In this respect, it is certainly true that the mere existence of an interactive website, without proof that there was continuous and systematic contact between the forum state and website, is not sufficient for a court to exercise jurisdiction.

Id. at 571-72 (internal citations omitted).  According to Coastal Video, the most valuable evidence of the extent of a defendant's internet contact with the forum state is "the amount of sales generated in the state by or through the interactive website."  Id. at 572.  The number of times the web site has been accessed by residents of the forum state would also be relevant, the court observed, to determining whether any basis for general jurisdiction existed.  See id.[13]

---

[13] Even in specific jurisdiction cases, some courts have focused on the degree to which the defendant actually conducted internet-based commercial transactions with residents of the forum.  In Zippo Manufacturing, for example, the Western District of Pennsylvania relied on evidence that the defendant had used its web site to enroll approximately 3,000 Pennsylvania residents as subscribers to its internet news service and had entered into agreements with seven internet providers in Pennsylvania.  See 952 F. Supp. at 1121, 1122, 1125-26.  Based on this evidence, the court stated: "We are being asked to determine whether [the defendant's] conducting of electronic commerce with Pennsylvania residents constitutes the purposeful availment of doing business in Pennsylvania.  We conclude that it does."  Id. at 1125-26.

Recently, in Hurley v. Cancun Playa Oasis International Hotels, the Eastern District of Pennsylvania applied the analysis set forth in ESAB Group to jurisdictional facts closely analogous to those presented by the Dagesses. In Hurley, as in this case, the plaintiff claimed to have suffered personal injuries as a result of negligence while staying at a foreign hotel. See 1999 WL 718556, at *1. In support of his jurisdictional claim, the plaintiff argued that one of the defendants, which acted as an agent for the defendant corporation that owned the hotel, maintained an internet web site and a toll-free telephone number, both of which were accessible from the forum state. See id. at *1, 2. The court found that it could not exercise specific jurisdiction over the defendants because the plaintiff's personal injury claim was not related to, and did not arise out of, the web site and toll-free number. See id. at *1.

The Hurley court then turned its attention to the question of general jurisdiciton. First, the court found that "[t]he use of a 1-800 telephone number by a nonresident corporation does not create the 'extensive and per[v]asive' contacts with the forum state needed to assert general jurisdiction over a corporation." Id. at *2 (alteration in original). Second, relying in part on ESAB Group, the court concluded that the interactive web site did

-31-

not support an exercise of general jurisdiction because "the record lack[ed] a single instance of deliberative contact between [the defendant that maintained the web site] and [the forum state] through the Internet." Id. at *3. Because the plaintiff had failed to provide any evidence that the defendant had used its web site to conduct business with forum residents, the court concluded that the plaintiff had "simply not established that [the defendant] ha[d] maintained continuous, systematic, and substantial business contacts with [the forum state]." Id.

I am persuaded by ESAB Group, Coastal Video, and Hurley that a proper analysis of the jurisdictional effects of an internet web site must focus on whether the defendant has actually and deliberately used its web site to conduct commercial transactions or other activities with residents of the forum.[14] In the

--------

[14] At least one court has found that by maintaining a web site that allows customers to make hotel reservations over the internet, a defendant "effectively place[s] [its] hotel and its services into an endless stream of commerce." Decker v. Circus Circus Hotel, 49 F. Supp.2d 743, 748 (D.N.J. 1999). Under the "stream of commerce" theory, a defendant may subject itself to personal jurisdiction in a forum state by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen, 444 U.S. at 298. The First Circuit, however, has declined to recognize this theory of jurisdiction. Rather, the First Circuit takes the position, articulated by Justice O'Connor in Asahi Metal Industry Co., Ltd. v. Superior Court of California, "that the 'placement of a product into the stream of

present case, the Dagesses bear the burden of proffering evidence that Marriott International used its web site to do business or otherwise interact with New Hampshire residents.  Because they have presented no such evidence, the web site adds no support to their claim of general jurisdiction.

In the end, my analysis returns full circle.  Even with the addition of two new jurisdictional facts -- the television advertisements and the internet web site -- Marriott International's forum-related contacts, taken in toto, do not constitute deliberate, continuous and systematic activity in New Hampshire.  Therefore, I conclude that due process bars the exercise of general jurisdiction over Plant Hotel and Oranjestad based on the activities of Marriott International.

## IV.  Conclusion

Despite the addition of two new facts to the jurisdictional calculus, the Dagesses have failed to make the prima facie showing necessary to establish personal jurisdiction over Plant Hotel and Oranjestad.  I cannot exercise specific jurisdiction

commerce, without more, is not an act of the defendant purposefully directed toward the forum State,' and, thus, is insufficient to support a claim of personal jurisdiction." Rodriquez, 115 F.3d at 85 (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 112 (1987)); see also Sawtelle, 70 F.3d at 1393; Boit, 967 F.2d at 681-83.

over the Aruban defendants because the injuries for which the Dagesses seek relief were not proximately caused by any of Marriott International's New Hampshire contacts.  Moreover, the forum-related activities engaged in by Marriott International as an agent for Plant Hotel and Oranjestad are not sufficiently continuous or systematic to subject either Marriott International or the Aruban defendants to general jurisdiction in New Hampshire.  Accordingly, Defendant Plant Hotel N.V. and Defendant Oranjestad Property Management N.V.'s motion to dismiss for lack of personal jurisdiction (Doc. #20) is granted.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

January 5, 2000

cc:  Tanya G. Richmond, Esq.
     Catherine C. Miller, Esq.