Jeffory P. FAIRBROTHER, Plaintiff,

v.

AMERICAN MONUMENT FOUNDA-TION, LLC, a Nevada corporation, Amtech Corporation, a Nevada corporation, and Thomas J. Neavitt, individually, Defendants.

No. CIV.A.03–BB–1238 PAC.

United States District Court, D. Colorado.

Aug. 27, 2004.

1148

Anne Lee McGihon, McGihon & Associates, LLC, Denver, CO, for Plaintiff.

Lee M. Kutner, Kutner, Miller, Kearns, PC, Denver, CO, for Defendants.

### ORDER

BOLAND, United States Magistrate Judge.

In this lawsuit, the plaintiff seeks among other things to collect $2.5 million allegedly owed to him on a promissory note and to foreclose liens and security interests in certain collateral securing payment of the promissory note. The case involves convoluted claims concerning two large monuments—the Monument to the Bicentennial of the United States Constitution (the "Constitution Monument"), and the United

States Presidency Monument (the "Presidential Monument").

The defendants have moved to dismiss the case for lack of personal jurisdiction. Consequently, the question presently is whether there are sufficient minimum contacts by any or all of the defendants to support the exercise of jurisdiction. I conclude that there are not. Accordingly, the defendants' **Motion to Dismiss for Lack of Personal Jurisdiction** (the "Motion") is GRANTED, and the Amended Complaint and this action are DISMISSED.

## I. BACKGROUND

The plaintiff is a resident of the State of Colorado. Plaintiff's Verified Amended Response to Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Opposition Thereto (the "Amended Response"), Exhibit A, ¶ 1.

Defendant AmTech Corporation ("AmTech") is a Nevada corporation. Motion, Exhibit A, ¶ 2. Defendant American Monument Foundation, LLC ("AMF"), is a Nevada limited liability company. *Id.* Defendant Neavitt is an individual and a resident of the State of Nevada. *Id.* at ¶ 3.

The plaintiff met Neavitt on March 28, 2001, in Las Vegas, Nevada. Amended Response, Exhibit A, ¶ 2; Motion, Exhibit A, ¶ 5. Neavitt is the President of AmTech. Motion, Exhibit A, ¶ 1. AmTech developed a suspension stabilizer system called "Roll-Gard" that is designed to dramatically decrease the risk of rollovers in sport utility vehicles, trucks, and vans. Amended Response, Exhibit B. Subsequently, the plaintiff worked for AmTech as a consultant in 2001–02. *Id.* at Exhibit A, ¶ 3.

AMF was formed on February 1, 2002, for the purpose of purchasing the Constitution Monument and the Presidential Monument. *Id.* at ¶ 8. Neavitt was the manager and a member of AMF. *Id.*

On January 22, 2002, the plaintiff purchased the Presidential Monument from Brian Hermalin and Linden Nelson for $20,000 at the signing of the purchase agreement and $280,000.00 due at the closing. *Id.* at ¶ 12. On February 5, 2002, the plaintiff sold the Presidential Monument to AMF for $10.00 and AMF's agreement to pay the $280,000.00 owed to Hermalin and Nelson. *Id.* Also on February 5, 2002, the plaintiff sold the Constitution Monument to AMF for $2.5 million, with payment due in full on or before June 30, 2003. Amended Complaint, ¶ 33. Both monuments were pledged by AMF as collateral securing the payment of the $2.5 million owed to the plaintiff. *Id.* at ¶¶ 33, 36.

All of the documents relating to the plaintiff's sale of the monuments to AMF were prepared by AMF. Amended Response, Exhibit A, ¶ 9.

The plaintiff alleges that he "believed" that he was a 25% owner of AMF. *Id.* at ¶ 11 (where the plaintiff states that "it was my belief that I was ... a one-quarter member of AMF"). The plaintiff claims this one-quarter interest in AMF as a result of his "agreement to benefit Neavitt personally by arranging and delivering to Neavitt personally, and not AMF, a replica of the Presidential Monument" (the "Replica"). Amended Response, Exhibit A, ¶ 11. This Replica was in the possession of Howard Tullman. *Id.* at ¶ 13. To ensure that the Replica was delivered to Neavitt, the plaintiff withheld $15,000.00 of the purchase price of the Presidential Monument pending receipt of the Replica by Neavitt. *Id.* The Replica was delivered to Neavitt on May 10, 2002, and the $15,000.00 hold back was released. *Id.*

The plaintiff seeks an award of amounts due under the promissory note; an accounting of AMF partnership profits; a judgment against Neavitt for conversion of the Replica; and a declaration that the plaintiff is the owner of the monuments. Amended Complaint, ¶¶ 55–73.

## II. PROCEDURAL BACKGROUND

The plaintiff's initial response to the Motion was stricken because I was not able to determine which arguments in the response were directed against which defendants, or whether the plaintiff was attempting to establish general jurisdiction, specific jurisdiction, or both. Order dated April 6, 2004 (filed April 8, 2004). Moreover, although the plaintiff attached numerous exhibits to the initial response, and although the response relied in part on the allegations of the Amended Complaint, it was not clear which exhibits or allegations supported which arguments. *Id.* Consequently, the plaintiff was ordered to submit an amended response which (1) addressed each defendant separately; (2) clearly asserted whether the defendant is alleged to be subject to general jurisdiction, specific jurisdiction, or both; (3) supported the assertions of jurisdiction with specific factual allegations; and (4) supported each factual allegation with a citation to supporting evidence. *Id.*

The plaintiff's Amended Response contains twenty-three numbered paragraphs which purport to establish sufficient minimum contacts for each defendant. Amended Response, pp. 10–23. Paragraphs 1 through 7 comply in part with my Order of April 6, 2004, because they address the defendants separately and clearly assert whether the defendant is claimed to be subject to general jurisdiction or specific jurisdiction. Amended Response, pp. 10–11, ¶¶ 1–7. The remaining sixteen paragraphs, however, do not in any way comply with the directives of my Order, leaving me to speculate as to which defendant and which type of jurisdiction they address.[1]

---

1. Although the plaintiff failed to comply with my order, I have nonetheless reviewed the plaintiff's exhibits, and I find that they do not,

## III. STANDARD OF REVIEW

■ Where, as here, a defendant seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995). This burden, however, is light. *Id.* When "there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.* Additionally:

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Id.* (internal quotations and citation omitted).

"The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1376 (10th Cir.1989). "[A]ffidavits submitted in support of or in opposition to the motion to dismiss for lack of [personal] jurisdiction must comply with the requirements of Rule 56(e). Therefore, such affidavits must contain personal knowledge, admissible facts, and affirma-

---

on their face, establish personal jurisdiction over any of the defendants.

tive showing of competency." *Encore Productions, Inc. v. Promise Keepers,* 53 F.Supp.2d 1101, 1115 (D.Colo.1999) (internal quotations and citations omitted).

In this case, my order requiring the plaintiff to submit more focused briefing notwithstanding, I'have been confronted by a problem "increasingly encountered by the federal courts: the submission of voluminous and poorly organized materials" filed in connection with a dispositive motion. *See Cuenca v. University of Kansas,* 101 Fed.Appx. 782, 2004 WL 1328676 (10th Cir.2004) (not selected for publication). Where a party fails to present to me specific facts by reference to exhibits, I am not required to go beyond the referenced portions of the voluminous materials submitted, comb the record, and make a party's case for it. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir. 1998). As the circuit court put it, a party opposing a dispositive motion

> must carry its burden in the district court in a timely fashion.... Otherwise, the nonmovant acts, or fails to act, at its peril. The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court.

*Id.* Or, put more colorfully, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991).

## IV. ANALYSIS

In order for a court to obtain jurisdiction over a non-resident defendant in a diversity action, the plaintiff must "establish that (1) jurisdiction is proper under the laws of the forum state and (2) the exercise of jurisdiction does not offend due process." *Doering v. Copper Mountain, Inc.,* 259 F.3d 1202, 1209 (10th Cir.2001). Under Colorado law, personal jurisdiction exists only if the requirements of both the state long-arm statute, section 13–1–124, C.R.S., and due process of law are satis-

fied. *Doe v. National Medical Servs.,* 748 F.Supp. 793, 795 (D.Colo.1990); *D & D Fuller CATV Constr., Inc. v. Pace,* 780 P.2d 520, 523 (Colo.1989). The Colorado long-arm statute confers jurisdiction to the fullest extent consistent with due process of law. *Waterval v. District Court,* 620 P.2d 5, 8 (Colo.1980), *cert. denied,* 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981). Consequently, because the long-arm statute imposes no greater limitation than federal due process, I proceed directly to the constitutional analysis. *See OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1090 (10th Cir.1998), (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.,* 17 F.3d 1302, 1305 (10th Cir.1994)).

In accordance with due process, I may "exercise personal jurisdiction over a nonresident defendant if minimum contacts exist between the defendant and the forum state such that maintenance of the lawsuit would not offend 'traditional notions of fair play and substantial justice.'" *Doering,* 259 F.3d at 1210 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The minimum contacts requirement may be satisfied by a showing of either general jurisdiction or specific jurisdiction. *Id.*

A court may exercise specific jurisdiction over a defendant

> if the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559, 62 L.Ed.2d 490. Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174, 85 L.Ed.2d 528, and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum

state." *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotations omitted) (emphasis in the original).

*OMI Holdings,* 149 F.3d at 1091.

 "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir.2001) (citation omitted).

In order for general jurisdiction to lie, a foreign corporation must have a substantial amount of contacts with the forum state. In assessing contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Trierweiler v. Croxton and Trench Holding Corp.,* 90 F.3d 1523, 1533 (10th Cir. 1996) (citations omitted). The plaintiff asserts that both general and specific jurisdiction exist as to each of the three defendants.

## A. Defendant AmTech

### 1. Specific Jurisdiction

 Initially I note that it is difficult to understand why AmTech is in the case at all—except perhaps in an attempt to establish jurisdiction. In the Scheduling Order, entered September 30, 2003, the only mention of AmTech in the plaintiff's statement of claims is that "AMF, through AMF, Fairbrother and AMF's parent, AmTech Corporation, has conducted business in Colorado sufficient to subject AMF to Colorado's long-arm statute." Scheduling Order, p. 2.

The Amended Complaint also provides little connection between AmTech and the plaintiff's claims. It is artfully drafted to allege that "Fairbrother purchased the Presidential Monument for the benefit of Defendants," without distinguishing between the three defendants. Amended Complaint, ¶ 17. The attachments to the Amended Complaint, however, indicate that only AMF, and not AmTech, entered into agreements to purchase the monuments; only AMF, and not AmTech, is obligated under the promissory note; only AMF, and not AmTech, entered into the security agreement collateralizing the promissory note; and the bills of sale are solely to AMF, and not to AmTech. Amended Complaint, Exhibit B. Moreover, the plaintiff claims an ownership interest in AMF, not in AmTech. Amended Complaint, ¶ 63.

These matters notwithstanding, the plaintiff asserts that AmTech is subject to specific jurisdiction because it "sought the benefit of contract with Fairbrother, having communicated with him regarding contracts and documents by fax, telephone, and e-mail while Fairbrother remained in Colorado." Amended Response, p. 10, ¶ 2. In support of this assertion, the plaintiff cites to the following allegation of the Amended Complaint:

Transaction documents and the form of UCC–1 were drafted by Defendants and/or their agent, clearly demonstrating that Defendants knew or should have known that Fairbrother resided in Colorado and therefore, Defendants were transacting business in Colorado.

*Id.* (citing to Amended Complaint, ¶ 16).

In order to establish specific jurisdiction over AmTech, the plaintiff must make a

prima facie showing that AmTech purposefully directed its activities at residents of Colorado, and that this litigation results from alleged injuries that arise out of those activities. *OMI Holdings,* 149 F.3d at 1090–91. The plaintiff's citation to this vague and conclusory statement is insufficient to make a prima facie showing of specific jurisdiction over AmTech. *See Wenz,* 55 F.3d at 1505. Moreover, the statement does not support the plaintiff's assertion that AmTech "sought the benefit of contract with Fairbrother, having communicated with him regarding contracts and documents by fax, telephone, and e-mail while Fairbrother remained in Colorado." The plaintiff simply has failed to provide sufficient specific facts about the alleged communications by fax, telephone, or e-mail.

■ The Supreme Court has made it clear that forming a contract with an out-of-state party, without more, does not automatically establish sufficient minimum contacts with the out-of-state party. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). To determine whether a defendant purposefully established minimum contacts, the court must look at the terms of the contract and the parties' negotiations, the contemplated future consequences, and the actual course of dealing. *Id.* at 479, 105 S.Ct. 2174. Here, the plaintiff has not made any showing that the contractual relationships were negotiated, created, performed, or breached in Colorado.

The plaintiff further asserts that "AmTech acted on behalf of AMF with regard to activities directed toward Colorado related to business with Fairbrother." Amended Response, p. 10, ¶ 3. In support of this assertion, the plaintiff relies on the following allegations of the Amended Complaint:

Defendants engaged in sufficient transaction of business in the State of Colorado under C.R.S. § 13–1–124(a), in that at all times relevant, Defendants knowingly transacted business in the State of Colorado as described throughout this Amended Complaint.

\* \* \* \* \* \*

Each of the documents attached as Composite Exhibit B to the Complaint, sets forth Fairbrother's address in Littleton, Colorado. Each of the agreements acknowledges that address as the proper location for delivery of all notices and demands under the various agreements. *See* Purchase Agreement (Constitutional Monument), at Paragraph F; UCC–1, Section 3 (Secured Party's Name); Bill of Sale; Purchase Agreement (Presidential Monument), at Paragraph E; correspondence dated April 29, 2002 delivering documents on Presidential Monument, including Seller's Bill of Sale; UCC–1s filed in Virginia, Colorado, Nevada and California.

*Id.* (citing to Amended Complaint, ¶¶ 14, 15).

These allegations do not support the plaintiff's assertion that "AmTech acted on behalf of AMF with regard to activities directed toward Colorado related to business with Fairbrother." Nor do the documents referred to in Exhibit B of the Amended Complaint. To the contrary, the documents in Exhibit B reflect business transactions relating to AMF and the plaintiff; AmTech is not mentioned anywhere in the documents. The plaintiff has failed to make a prima facie showing of specific jurisdiction over defendant AmTech.

**2. General Jurisdiction**

■ The plaintiff asserts that AmTech is subject to general personal jurisdiction because it sold its products in Colorado by direct sales and internet transactions over the World Wide Web. Amended Response,

p. 10, ¶ 1. In support of this assertion, the plaintiff cites to Exhibit B of the Amended Response, which appears to be printouts of AmTech's web page. *Id.* The printouts advertise the RollGard and state that the RollGard can be ordered from the website or from one of the listed dealers. *Id.* at Exhibit B. The website lists eight dealers located in Colorado. *Id.*

The relationship between the existence of a website and personal jurisdiction is not well-developed in the case law. However, most courts that have analyzed the issue have found that general jurisdiction cannot be based solely on the existence of a website. *Dagesse v. Plant Hotel N.V.,* 113 F.Supp.2d 211, 221 (D.N.H.2000). Many of the cases that have addressed the issue have either decided the matter on facts unrelated to the website, *see Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34, 40 (D.Mass.1997) (providing a comprehensive overview of the published cases), or have analyzed the issue as to specific jurisdiction rather than general jurisdiction. *Dagesse,* 113 F.Supp.2d at 220. "Moreover, many of the decided cases involve claims, such as trademark infringement and defamation, that arise directly out of the defendant's internet activities." *Id.*

Many courts have used the analysis set out in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997). *Zippo* devised a sliding scale which defines three categories of websites based on the degree of interactivity available on the website. According to the *Zippo* court:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 1124 (citations omitted).

AmTech's website allows viewers to locate a RollGard dealer in their area or to order the RollGard directly from the website. Amended Response, Exhibit B, p. 2. The plaintiff provides no evidence that AmTech's website allows AmTech to enter into contracts with Colorado residents "that involve the knowing and repeated transmission of computer files over the Internet," thus placing AmTech's website in the fully interactive category. Nor is it a passive website that simply makes information available to those who are interested. As with the website at issue in *Dagesse,* AmTech's website falls into the middle category. *See Dagesse,* 113 F.Supp.2d at 219, 222; *Hurley v. Cancun Playa Oasis Int'l Hotels,* No. Civ.A. 99–574, 1999 WL 718556, at *3 (E.D.Pa. August 31, 1999).

As the *Dagesse* court points out, the *Zippo* analysis is most useful where the website in question falls at one end of the

spectrum or the other. *Dagesse*, 113 F.Supp.2d at 222. Consequently, the *Dagesse* court decided that "a proper analysis of the jurisdictional effects of an internet web site" must "look beyond the degree of interactivity provided by the web site," and instead "focus on whether the defendant has actually and deliberately used its web site to conduct commercial transactions or other activities with residents of the forum." *Id.* at 222–23. *See also Hurley*, 1999 WL 718556 at *3; *ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323, 330–31 (D.S.C.1999); *Coastal Video Communications, Corp. v. The Staywell Corp.*, 59 F.Supp.2d 562, 571–72. (E.D.Va.1999). I find the *Dagesse* analysis persuasive because it more fully embraces the traditional constitutional principles of personal jurisdiction while recognizing the challenges presented by website technology.

The following facts are undisputed. AmTech has at all times maintained its only office in Las Vegas, Nevada. Reply, Exhibit A, ¶ 4. AmTech recently negotiated an agreement with CSK Auto, Inc., d/b/a/ Checkers Auto Parts, to use a CSK warehouse in Phoenix, Arizona, as a regional distribution center. *Id.* at ¶ 2. AmTech specifically targets Nevada, California, New Mexico, and Arizona; it does not target Colorado. *Id.* There are no Checkers facilities of any kind in Colorado that stock RollGard, and Checkers has never reported sales of RollGard from any of its Colorado locations. *Id.* at ¶ 3. Although the Checkers' warehouse in Arizona will ship a RollGard to Colorado if a Colorado resident requests one at a Checkers store, *id.* at ¶ 2, AmTech has never shipped a RollGard to any Checkers facility in Colorado. *Id.* at ¶ 3.

Based on these facts, I find that AmTech's website does not establish the deliberate, continuous, and systematic activity necessary to constitute general jurisdiction. To the contrary, AmTech has not deliberately used its web site to conduct commercial transactions or other activities with residents of Colorado and, in fact, has not conducted any actual business in Colorado as a result of the website.

I also have reviewed in its entirety the Affidavit of Jeffory Fairbrother, which is attached as Exhibit A to the Amended Response. It asserts the following general contacts between AmTech and the State of Colorado:

1. The plaintiff worked as a consultant for AmTech in 2001–02 from his home office in Littleton, Colorado, performing the following tasks in Colorado:

a. Preparation of a 63 page report concerning the RollGard product;

b. Design of a proposed extension of his home office; and

c. Receipt of a RollGard, which he arranged to be installed on a friend's car in Colorado. Amended Response, Exhibit B at ¶¶ 3–4.

2. AmTech leased a car for the plaintiff's "personal use." The car was registered and insured "in Colorado in the name of AmTech." *Id.* at ¶ 7.

3. The plaintiff used an AmTech credit card to pay certain expenses to travel out of the State of Colorado. *Id.* at ¶¶ 21–22.

4. AmTech provided the plaintiff with a business card. *Id.* at ¶ 23. Significantly, however, the business card listed Fairbrother at a Nevada address and telephone number. Amended Complaint, Exhibit M.

In the context of this case and taken as a whole, these limited contacts, which result entirely from Fairbrother's residence in Colorado, do not constitute continuous, systematic, and substantial activity within the State of Colorado sufficient to subject AmTech to the general jurisdiction of the state.

## B. Defendant AMF

### 1. Specific Jurisdiction

 As with AmTech, the plaintiff asserts that AMF is subject to specific jurisdiction because it "sought the benefit of contract with Fairbrother having communicated with him regarding contracts and documents by fax, telephone, and e-mail while Fairbrother remained in Colorado." Amended Response, p. 11, ¶ 5. The plaintiff relies on the same allegation of the Amended Complaint in support of this assertion:

> Transaction documents and the form of UCC–1 were drafted by Defendants and/or their agent, clearly demonstrating that Defendants knew or should have known that Fairbrother resided in Colorado and therefore, Defendants were transacting business in Colorado.

*Id.* (citing to Amended Complaint, ¶ 16).

As with AmTech, this allegation does not support the plaintiff's assertion that AMF is subject to specific jurisdiction because it "sought the benefit of contract with Fairbrother having communicated with him regarding contracts and documents by fax, telephone, and e-mail while Fairbrother remained in Colorado." The plaintiff has failed to make a prima facie showing of specific personal jurisdiction over AMF for the same reasons he failed to make a prima facie showing of specific personal jurisdiction over AmTech.[2]

### 2. General Jurisdiction

The plaintiff asserts that AMF is subject to general jurisdiction in Colorado because "it continuously and systematically conducts business here by means of an active World Wide Web site, advertising the monuments over the Internet and the underlying litigation is based upon activities that arise out of or relate to the sale of the monuments." Amended Response, p. 10, ¶ 4. The plaintiff cites Exhibit C in support this statement, which he claims denotes the nationwide Internet listing of AMF. *Id.*

The plaintiff, however, provides no evidence that AMF has actually and deliberately used its web site to conduct commercial transactions or other activities with residents of Colorado. Consequently, the plaintiff has not made a prima facie showing of general jurisdiction over AMF. *See Dagesse,* 113 F.Supp.2d at 222–23.[3]

---

**2.** In addition to the plaintiff's failure to show that any of his contractual agreements with AMF were negotiated, created, performed, or breached in Colorado, I note that all of the pertinent agreements between AMF and the plaintiff state that they shall be interpreted under Nevada law. Amended Complaint, Exhibit B, Purchase Agreement (Constitution Monument), § G; Security Agreement, ¶ 8; Purchase Agreement (Presidential Monument), § F. This fact reinforces the lack of personal jurisdiction over AMF in this forum. *Burger King,* 471 U.S. at 482, 105 S.Ct. 2174; *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1080 (10th Cir.1995) (stating that the parties' contractual choice of law is relevant in assessing in assessing minimum contacts and in assessing the parties' relationship and expectations).

**3.** Without seeking leave of court, the plaintiff filed a supplement to his Amended Response. Plaintiff's Supplement to Response to Motion to Dismiss for Lack of Personal Jurisdiction (the "Supplement"), filed August 16, 2004. The Supplement asserts that AMF is further subject to general personal jurisdiction because it attempted to sell both monuments on e-bay on June 6 2004, and on one other unspecified date.

Although the Supplement is not properly before me, I note that only pre-litigation contacts are relevant to the jurisdictional question. *See e.g., Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 569 (2d Cir.1996); *Greene v. Sha–Na–Na,* 637 F.Supp. 591, 595 (D.Conn.1986) ("It is well established that jurisdiction is to be determined by examining the conduct of the defendants as of the time of service of the complaint"); *Lachman v. Bank of Louisiana in New Orleans,* 510 F.Supp. 753, 757 (N.D.Ohio 1981) (same); *In re Puerto Rico Air Disaster Litig.,* 340 F.Supp. 492, 498 n. 19 (D.P.R.1972). The Supplement provides no basis upon which to find general personal jurisdiction over AMF.

▉ The plaintiff alleges in his affidavit that "it was my belief that I was also a one-quarter member of AMF." Amended Response, Exhibit A, ¶ 8. The defendants, through the Affidavit of Thomas J. Neavitt, directly deny that Fairbrother ever was a member of AMF. Motion, Exhibit A, ¶ 21. Fairbrother's statement that it was his "belief" that he was a member of AMF, which is not made on personal knowledge, is insufficient. "[O]nly the well pled facts of plaintiff's complaint [and affidavit], as distinguished from mere conclusory allegations, must be accepted as true." *Wenz,* 55 F.3d at 1505. *Accord Tavery v. United States,* 32 F.3d 1423, 1427 n. 4 (10th Cir. 1994)("[O]nly statements made on personal knowledge will support a motion for summary judgment; statements of mere belief must be disregarded").

## C. Defendant Neavitt

### 1. Specific Jurisdiction

▉ The plaintiff asserts that defendant Neavitt is subject to specific jurisdiction because he "sought and obtained the personal services" of the plaintiff in Colorado to obtain the Replica and because he "sought the benefit of contract with Fairbrother while Fairbrother remained in Colorado." Response, p. 11, ¶ 6. In support of this assertion, the plaintiff relies on the following allegations of the Amended Complaint:

Defendants engaged in sufficient transaction of business in the State of Colorado under C.R.S. § 13–1–124(a), in that at all times relevant, Defendants knowingly transacted business in the State of Colorado as described throughout this Amended Complaint.

\* \* \* \* \* \*

Each of the documents attached as Composite Exhibit B to the Complaint, sets forth Fairbrother's address in Lit-

tleton, Colorado. Each of the agreements acknowledges that address as the proper location for delivery of all notices and demands under the various agreements. *See* Purchase Agreement (Constitutional Monument), at Paragraph F; UCC–1, Section 3 (Secured Party's Name); Bill of Sale; Purchase Agreement (Presidential Monument), at Paragraph E; correspondence dated April 29, 2002 delivering documents on Presidential Monument, including Seller's Bill of Sale; UCC–1s filed in Virginia, Colorado, Nevada and California.

\* \* \* \* \* \*

As a part of the transaction at issue in this matter, Fairbrother purchased the Presidential Monument for the benefit of Defendants. Fairbrother received in Colorado all the documents relating to the purchase of the Presidential Monument from the sellers' counsel in Michigan. He then executed the documents in Colorado for the benefit of himself and Defendants, and delivered the executed documents to the appropriate party in either Michigan or Nevada.

\* \* \* \* \* \*

The negotiations to sell the Monuments, all rights related thereto, and the Plaque Project, were conducted almost exclusively between Fairbrother and Neavitt. These negotiations took place from mid-December, 2001 until the signing of the contracts for AMF to purchase the Monuments and the Plaque Project (the "Transaction") from Fairbrother on February 5, 2002.

\* \* \* \* \* \*

Prior to the instigation of these proceedings by Fairbrother against AMF, Connally routinely copied all documents and emails relating to the case to both Neavitt and Fairbrother. *See e.g.* pleadings attached as Exhibit E, hereto.[4]

4. In February 2003, the Presidential Monu- ment was the subject of an action for declara-

\* \* \* \* \* \*

On or about June 19, 2002, AmTech, through Neavitt, forwarded correspondence confirming that Fairbrother had a five-year consulting contract "valued in excess of $500,000." A copy of that document is attached as Exhibit H. Pursuant to that agreement, Fairbrother performed certain work for AmTech related to its Las Vegas offices.[5]

\* \* \* \* \* \*

In April of 2002, Neavitt forwarded to Fairbrother a handwritten personal note which stated "Jeff, thought you might like to see this. Tom" and to which was attached information relating to a $5 million loan application by AMF to finance the Monument and Plaque Projects. *See* Exhibit L.[6]

\* \* \* \* \* \*

There were several reasons for the inclusion of Fairbrother as a partner in AMF. First, Fairbrother agreed to sell the Monuments to AMF at a substantially discounted price of $2.5 million for the additional incentive of the partnership interest in AMF. Another reason Fairbrother insisted on the partnership interest was his agreement to accept no money down for the Monuments and Plaque Project and delayed payment of the $2.5 million until August 5, 2002, as well as Neavitt's requirements that Fairbrother deliver the Replica to him personally. Finally, inclusion of Fairbrother as a partner in AMF was due to his intimate knowledge of the Monuments and the Plaque Project, which was invaluable to AMF.

*Id.* (citing Amended Complaint, ¶¶ 14, 15, 17, 18, 29, 35, 42, 44).

These allegations do not establish sufficient contacts to create specific jurisdiction over Neavitt. In order to establish the minimum contacts necessary for specific jurisdiction, the plaintiff must make a prima facie showing that (1) the defendant purposefully availed himself of the privilege of acting in Colorado or of causing important consequences in the state; and (2) the cause of action arises in Colorado from the consequences of the defendant's activities.[7] *Encore Productions,* 53

---

tory judgment brought by AMF in the United States District Court for the Eastern District of Virginia. Amended Response, Exhibit A, ¶ 15. AMF retained the services of Thomas Connally, an attorney in Virginia, to represent it. *Id.* at ¶ 16. Judgment was entered in favor of AMF as the rightful owner. *Id.* at ¶ 15.

5. Exhibit H to the Amended Complaint is a letter signed by Neavitt. The letter is typewritten on AmTech stationary which shows a Nevada address and states the following:

> To Whom It May Concern:
> Jeffory P. Fairbrother of 5155 West Fair Place, Littleton, Colorado, has a five (5) year consulting contract with AmTech Corporation that is valued in excess of $500,000. Pursuant to this contract, he has been paid approximately $100,000 over the past 12 months. In addition, a company related to AmTech has entered into a contract to purchase unencumbered assets from Mr. Fairbrother for $2,200,000, which

contract is due to close later this calendar year. Should you have any questions regarding these matters, please feel free to call me.

Amended Complaint, Exhibit H. There is no indication regarding where the letter was sent.

6. Exhibit L to the Amended Complaint is a handwritten note that states "Jeff Thought you might like to se this. Tom" The note does not indicate where it was sent from or where it was sent to.

7. I am aware that "employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." *In re An Application to Enforce Administrative Subpoenas Duces Tecum v. Knowles,* 87 F.3d 413, 418 (10th Cir.1996) (citing *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79

F.Supp.2d at 1116.

■ With regard to the plaintiff's allegations that he received in Colorado documents from third parties, the Supreme Court has clearly stated that the unilateral activities of the plaintiff or third parties "cannot satisfy the requirement of contact with the forum state." *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174. Rather, "it is essential in each case that there be some act by which *the defendant* purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 475, 105 S.Ct. 2174 (emphasis added).

With regard to the plaintiff's vague allegations that negotiations "were conducted almost exclusively between Fairbrother and Neavitt"; "AmTech, through Neavitt, forwarded correspondence confirming that Fairbrother had a five-year consulting contract"; "Neavitt forwarded to Fairbrother a handwritten personal note"; and "Neavitt's requirements that Fairbrother deliver the Replica to him personally," only the well pled facts of plaintiff's complaint are accepted as true. *Wenz,* 55 F.3d at 1505. The plaintiff does not plead sufficient facts to show that any of these actions were directed at the State of Colorado.[8] The plaintiff has failed to make a *prima facie* showing of specific personal jurisdiction as to defendant Neavitt.

### 2. General Jurisdiction

■ The plaintiff asserts that defendant Neavitt is subject to general jurisdiction because he conducted business with the plaintiff in Colorado over more than two years through telephone, email, and facsimile. Response, p. 11, ¶ 7. In support

L.Ed.2d 804 (1984)). Because I find that minimum contacts do not exist as to either AmTech or AMF, I do not analyze whether Neavitt is subject to personal jurisdiction as a "primary participant."

of this assertion, the plaintiff cites to the following allegations of the Amended Complaint:

> The negotiations to sell the Monuments, all rights related thereto, and the Plaque Project, were conducted almost exclusively between Fairbrother and Neavitt. These negotiations took place from mid-December, 2001 until the signing of the contracts for AMF to purchase the Monuments and the Plaque Project (the "Transaction") from Fairbrother on February 5, 2002.

\* \* \* \* \* \*

> On or about June 19, 2002, AmTech, through Neavitt, forwarded correspondence confirming that Fairbrother had a five-year consulting contract "valued in excess of $500,000." A copy of that document is attached as Exhibit H. Pursuant to that agreement, Fairbrother performed certain work for AmTech related to its Las Vegas offices.

\* \* \* \* \* \*

> Throughout 2002 and through June 30, 2003, Fairbrother fully and actively participated in the business of AMF in the capacity as a partner. Fairbrother traveled to the offices of AMF on a regular basis, supervised restoration works on one of the Monuments in California and was involved in the activities of AMF. Fairbrother actively assisted AMF in the Plaque Project and in February 2002 traveled with McGill to Garfield High School in Los Angeles to inspect one of the only known existing set of plaques that AMF intended on reproducing.

8. Even if the plaintiff had sufficiently pled that Neavitt mailed the two papers to him in Colorado, such a limited number of communications are insufficient to establish minimum contacts. *Soma Medical Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1299 (10th Cir.1999).

*Id.* (citing to Amended Complaint, ¶¶ 18, 35, 45).

These allegations do not support the plaintiff's assertion that Neavitt "conducted business with the plaintiff in Colorado over more than two years through telephone, email, and facsimile." Only the well pled facts of plaintiff's complaint are accepted as true. *Wenz,* 55 F.3d at 1505. Vague allegations that negotiations "were conducted almost exclusively between Fairbrother and Neavitt;" and "AmTech, through Neavitt, forwarded correspondence confirming that Fairbrother had a five-year consulting contract," are insufficient to show that Neavitt directed these actions to the State of Colorado.

The allegations of the complaint are taken as true only to the extent they are uncontroverted by the defendant's affidavit, and if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *Id.* Neavitt attests, and the plaintiff does not dispute, that he has never traveled to Colorado to meet with the plaintiff, has never owned property or had any business interest in Colorado, and has traveled to Colorado only once—in 1958. Motion, Exhibit A, ¶¶ 23–25.

The plaintiff has failed to make a prima facie showing that defendant Neavitt had substantial, continuous, and systematic contacts with Colorado. Therefore, the plaintiff has failed to make a prima facie showing of general jurisdiction.

**D. Fair Play and Substantial Justice**

■ The due process clause prohibits the exercise of personal jurisdiction "under circumstances that would offend traditional notions of fair play and substantial justice." *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102,

113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotations omitted). In considering whether the exercise of personal jurisdiction comports with fair play and substantial justice, I look at the following factors:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (internal quotations omitted).

These factors may weigh so strongly as to establish the reasonableness of jurisdiction in the face of weak minimum contacts. *Id.* Conversely, these factors may dictate that personal jurisdiction be denied even where minimum contacts have been established. *Id.* at 477–78, 105 S.Ct. 2174.

■ Under the facts of this case, an examination of these factors establishes that the exercise of personal jurisdiction over the defendants would be constitutionally unreasonable. The defendants have had no significant contacts with the State of Colorado.[9] As a result, it would be unreasonably burdensome for the defendants to defend a suit here. Colorado does not have a compelling interest in adjudicating a dispute that appears to be centered in Nevada, involves personal property in California and Virginia, and will be litigated under Nevada law. Although litigating in this forum would certainly be more convenient for the plaintiff, it does not appear to be advantageous in terms of providing a more efficient resolu-

9. Indeed, the plaintiff's choice of residence appears to be the only significant connection with Colorado. Choice of residence is a uni-

lateral one that will not allow a plaintiff to establish jurisdiction over a non-forum resident. *Far West,* 46 F.3d at 1079.

tion of the dispute because "the witnesses are spread from Washington DC to California." Amended Response, p. 15, ¶ 23. Finally, the shared interest in furthering fundamental substantive social policies does not appear to be a compelling factor in deciding whether personal jurisdiction over the defendants is reasonable. On the whole, these factors do not weigh so strongly as to establish the reasonableness of jurisdiction over the defendants in light of their lack of contacts with Colorado. The exercise of jurisdiction over the defendants would be constitutionally unreasonable.

## V. CONCLUSION

IT IS ORDERED that the defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED. The Amended Complaint and this action are DISMISSED.